IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| ANDREW LEE WARNICK,<br>P.O. Box 444<br>Grantsville, MD 21536<br><br>    Plaintiff,<br><br>v.<br><br>DELMARVA POWER & LIGHT COMPANY,<br>500 N. Wakefield Drive<br>Newark, Delaware 19702<br><br>and<br><br>POTOMAC ELECTRIC POWER COMPANY,<br>701 9th Street, NW<br>Washington, DC 20068<br><br>and<br><br>PEPCO HOLDINGS LLC,<br>701 9th Street NW<br>Washington, DC 20068<br><br>and<br><br>EXELON CORPORATION,<br>10 South Dearborn Street<br>Chicago, Illinois 60603<br><br>    Defendants. | CASE NO.: 1:23-CV-175<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Andrew Lee Warnick, by and through undersigned counsel, hereby demands judgment against the above-named Defendant, and avers as follows by way of complaint:

## THE PARTIES

1. Plaintiff Andrew Lee Warnick is a resident of Grantville, Maryland.

2. At all times relevant hereto, Mr. Warnick was employed by and working within the scope of his employment with Dudley Property Maintenance, Inc., d/b/a Maintenance Connection ("Maintenance Connection"), located at 14005 Derrickson Avenue, Ocean City, Maryland 21842.

3. Defendant Delmarva Power & Light Company ("Delmarva") is a corporation organized and existing under the laws of the state of Delaware with a principal place of business located at 500 N. Wakefield Drive, Newark, Delaware 19702.

4. Defendant Delmarva is an energy company that provides electricity and natural gas to customers on portions of the Delmarva Peninsula in the states of Delaware, Maryland, and Virginia.

5. Defendant Potomac Electric Power Company ("Pepco") is a U.S. corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 701 9th Street, NW, Washington, DC 20068.

6. Defendant Pepco is in the business of providing energy and energy-related products to residential and business customers in the city of Washington, District of Columbia, and to surrounding communities in the State of Maryland.

7. Defendant Pepco Holdings, LLC ("Pepco Holdings") is a U.S. limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located at 701 9th Street, NW, Washington, District of Columbia 20068.

8. Defendant Pepco Holdings is the parent company of both Pepco and Delmarva.

9. Defendant Pepco Holdings is a wholly-owned subsidiary of Exelon Corporation ("Exelon"), a national energy provider organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 10 South Dearborn Street, Chicago, Illinois 60603.

10. Defendants Pepco, Delmarva, Pepco Holdings, and Exelon are collectively referred to as "the Utility Defendants."

11. At all times relevant hereto, the Utility Defendants regularly and continuously conducted business in the State of Maryland.

## JURISDICTION AND VENUE

12. Jurisdiction is based on 28 U.S.C. §1332(a)(1), as this action involves a controversy between citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

13. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the District of Maryland is where the accident occurred and where the Utility Defendants are subject to personal jurisdiction.

## FACTS

14. Plaintiff incorporates herein by reference the foregoing paragraphs as though more fully set forth at length.

15. The Utility Defendants designed and constructed, and on September 9, 2021, owned, operated, and maintained an electric supply substation ("Electrical Substation") on the premises of the Oceana Condominium, 8201 Atlantic Avenue, Ocean City, Maryland 21842 ("the Premises").

16. The Electrical Substation was designed constructed and maintained by the Utility Defendants in furtherance of their business operations and for the exclusive purpose of providing electricity to Utility Defendants' customers located in the vicinity of 8201 Atlantic Avenue Ocean City, Maryland in exchange for payments by such customers to the Utility Defendants.

17. On or about September 9, 2021, and for a long time prior thereto, the Utility Defendants had a duty to securely enclose and secure the Electrical Substation and the equipment located therein in a manner that prevented unauthorized or unintended persons access to the Electrical Substation and to protect against accidental close contact with live parts.

18. On or about September 9, 2021, and for a long time prior thereto, the Utility Defendants had a duty to protect against inadvertent close proximity or contact to energized equipment by placing guards and sufficient space around live parts.

19. On or about September 9, 2021, and for a long time prior thereto, the Utility Defendants had a duty to restrict access to the Electrical Substation by keeping all entrances to the Electrical Substation securely locked at all times in a manner that prevented access by unauthorized, unintended, persons or by persons who lacked specific knowledge of the components located at the Electrical Substation and to protect against accidental close proximity or contact with live parts.

20. Access to the subject Electrical Substation was controlled only by double doors with a standard quickset lock on the door handle and a small sign identifying "Delmarva Power, an Exelon Company" as the owner and operator of the Electrical Substation and stating that access was limited to "authorized personnel."

21. The Utility Defendants were reckless, grossly negligent, and/or negligent in that they failed to take steps to properly secure the keys to the quickset lock on the door handle; on

the contrary, the Utility Defendants provided keys to the building owner and/or property manager and other untrained individuals and in no way restricted access to the Electrical Substation to the keys that permitted entry.

22. The sign that the Utility Defendants placed on the door did not: (1) define "authorized personnel"; (2) identify who must authorize access; (3) limit access to employees of Delmarva or one of the other Utility Defendants; (4) indicate that safety equipment, such as insulated shoes, are required for entry; or (5) advise that the live component parts located inside the room were unidentified and, completely exposed, and did not comply with industry safety standards such that merely standing in the wrong location in the room was likely to cause severe injury or death,

23. The Utility Defendants were reckless, grossly negligent, and/or negligent in that they failed to post signs or markings to warn that the room contained exposed and unguarded equipment that was energized with 7,200 volts of electricity.

24. When the Utility Defendants designed, constructed, and operated the Electrical Substation, they placed multiple exposed, unguarded, and energized metal component parts immediately inside the unsecured and unguarded door to the Electrical Substation.

25. The Utility Defendants were reckless, grossly negligent, and/or negligent in that they failed to design the Electrical Substation in a way that would protect against accidental proximity or contact with energized equipment.

26. The Utility Defendants were reckless, grossly negligent, and/or negligent in that they designed, constructed, and operated the Electrical Substation so that exposed, unguarded, and energized metal component parts were placed immediately inside the door to the Electrical

Substation, causing a person entering the Electrical Substation to pass in close proximity to the exposed, unguarded, and energized metal component parts.

27. The Utility Defendants were reckless, grossly negligent, and/or negligent in that they failed to erect a fence, cage, or other guard around the exposed and energized metal component parts.

28. The Utility Defendants were reckless, grossly negligent, and/or negligent in that they failed to place any warning signs whatsoever inside the Electrical Substation. Specifically, the Utility Defendants failed to provide any warnings to indicate that the completely exposed and unguarded component parts that were less than two (2) feet inside the door were energized.

29. Braniff Property Management, LLC ("Braniff") is and has been the property manager for the Oceana Condominium since approximately 2016.

30. The Utility Defendants provided Braniff and/or the owners of the Oceana Condominium with an key to the Electrical Substation.

31. The aforesaid key provided by the Utility Defendants did not contain any labels or markings to indicate that no persons other than designated Utility Defendant employees should access the Electrical Substation.

32. At no time did the Utility Defendants warn Braniff and/or the owners of the Oceana Condominium or any of their representatives that no persons other than trained and designated Utility Defendant employees should be permitted to access the Electrical Substation, or that special protective clothing must be worn before any individual could safely access the area.

33. Beginning in 2016 and at all relevant times thereafter, Braniff retained Andrew Lee Warnick's employer, Maintenance Connection, to perform certain maintenance duties at the Premises.

34. At no time did Braniff or any representative of the Utility Defendants inform or instruct the owner or employees of Maintenance Connection that they were not permitted access to the Electrical Substation.

35. On the contrary, Braniff provided Andrew Lee Warnick's employer, Maintenance Connection, with a key to the Electrical Substation.

36. The key provided to Maintenance Connection that permitted access to the electrical substation did not feature any tag or label restricting its use to designated employers of the Utility Defendants.

37. Every Spring since 2016, Maintenance Connection employees had painted the double doors to the Electrical Substation, which maintenance duties required the Maintenance Connection employees to open the doors and enter the Electrical Substation.

38. For many years prior to 2021 The Utility Defendants knew or should have known that persons who were not designated Utility Defendant employees were opening the doors and entering the Electrical Substation.

39. Because they had been given a key to the Electrical Substation, the Maintenance Connection employees, including Andrew Lee Warnick, believed they were both authorized and assigned to enter the room and believed that they could enter such room without risk of death or serious injury through accident or inadvertent contact.

-8-

40. On or about September 9, 2021, Andrew Lee Warnick was working in the course and scope of his employment with Maintenance Connection performing maintenance work at the premises of the Oceana Condominium.

41. While performing maintenance work at the Oceana Condominium on September 9, 2021, Andrew Lee Warnick and his employer were permitted access to this Electrical Substation via the key that Braniff had provided previously.

42. As he entered the Electrical Substation while performing maintenance at the Oceana Condominium on September 9, 2021, Andrew Lee Warnick inadvertently stepped in close proximity to an exposed, unguarded, and energized metal component part.

43. Unknown to Andrew Lee Warnick, the exposed and unguarded metal component part that he inadvertently stepped in close proximity to while performing maintenance at the Oceana Condominium was hot and carried sufficient voltage to cause death or extreme harm.

44. As a result of the Utility Defendants' failure to properly design, construct, and secure the Electrical Substation, resulting in Andrew Lee Warnick's inadvertent close proximity or contact with the exposed and unguarded metal switch, 7,200 volts of electricity arced into Andrew Lee Warnick's body, causing an explosion and resulting in severe, permanent, disfiguring, and life-threatening burns and other injuries.

45. Due to the life-threatening severity of his injuries, the Maryland State Police airlifted Andrew Lee Warnick to Johns Hopkins Bayview Burn Center, where he was hospitalized in the intensive care burn unit due to the serious nature of his injuries.

46. As a result of the forgoing exposure to such unguarded high voltage electricity, Andrew Lee Warnick sustained severe, permanent, disfiguring, and life-altering injuries including, but not limited to, injuries to his head, resulting in cognitive deficits, and severe burns

to his hands, arms, chest, back, neck, and face, which have required multiple surgeries, including amputation and skin grafting, among other serious and permanent injuries.

47. As a result of the foregoing incident, Andrew Lee Warnick has undergone medical treatment and multiple surgical procedures for his injuries, including skin grafting and amputation, has incurred medical bills, and will incur additional medical bills in the future for the ongoing treatment of his injuries.

48. As a result of the foregoing incident, Andrew Lee Warnick has been disabled from work and has sustained lost wages and will continue to be disabled in the future and may incur additional lost wages in the future and a loss of future earning capacity.

49. As a result of the foregoing incident, Andrew Lee Warnick has endured extreme pain and suffering and may continue to experience pain and suffering in the future.

50. As a result of the foregoing incident, Andrew Lee Warnick suffered a loss of life's enjoyment and may suffer further loss of life enjoyment in the future.

51. As a result of the foregoing incident, Andrew Lee Warnick has suffered permanent scarring, disfigurement, and permanent partial loss of use of his right arm and hand with very limited range of motion.

52. As a result of the foregoing incident, Andrew Lee Warnick has suffered and will continue to suffer cognitive, neurological, and emotional injuries, including but not limited to memory loss and other cognitive deficits, limited motor skills, severe anxiety, mental anguish, and depression.

53. Not only had the Utility Defendants failed to properly secure the Electrical Substation by providing the key to the quickset lock in the door handle to the building owner and/or Braniff, but the representatives of the Utility Defendants who responded to the Premises

following Plaintiff's electrocution on September 9, 2021 did not maintain a key to the Electrical Substation. Instead, Plaintiff's employer had to give the Utility Defendants' representatives a key to the Electrical Substation.

54. The Utility Defendants had a duty to complete regular inspections of the Electric Substation to confirm that the substation was safe or use, properly secured, and not otherwise being accessed by unauthorized personnel and to ensure that no parties other than designated Utility Defendant employees had access to the Electrical Substation.

55. Upon information and belief, no representative of the Utility Defendants had inspected or even visited the Electrical Substation for at least seven (7) years prior to September 8, 2021.

56. Upon information and belief, the Utility Defendants took no action to monitor or secure the premises for the purpose of detecting whether or when individuals who were not designated Utility Defendants accessed of attempted to access the Electrical Substation.

## COUNT I – STRICT LIABILITY
### ANDREW LEE WARNICK V. DELMARVA POWER & LIGHT COMPANY, POTOMAC ELECTRIC POWER COMPANY, PEPCO HOLDINGS, LLC, AND EXELON CORPORATION

57. Plaintiff incorporates herein by reference the foregoing paragraphs as though more fully set forth at length.

58. Electricity is a highly dangerous force.

59. The transmission of electricity through a facility such as the Electrical Substation is an abnormally dangerous activity.

60. The transmission of electricity through a facility such as the Electrical Substation involves a high degree of risk of harm to the person of another.

61. The transmission of electricity through a facility such as the Electrical Substation presents an unusually high risk to public welfare.

62. The transmission of electricity through a facility such as the Electrical Substation involves a high risk of death or serious bodily harm.

63. The Utility Defendants designed, constructed, installed, and maintained the Electrical Substation in a manner that did not comply with industry customs, procedures, and safety standards and, as such, was inherently and unreasonably dangerous and unsafe.

64. The Utility Defendants failed to properly and appropriately secure and monitor the Electrical Substation consistent with industry customs, procedures, and safety standards and, thereby permitted inherently and unreasonably dangerous and unsafe conditions to exist over many years such that it was inevitable that some person was likely to experience severe injury or death as a result of exposure to the dangerous and exposed component parts located at the electrical substation.

65. In light of the gravity of the potential harm, the Utility Defendants, as providers of electricity, are strictly liable for the severe, life-threatening, permanent, and disfiguring injuries that Andrew Lee Warnick sustained when he inadvertently and accidentally came into close proximity or contact with the Utility Defendants' exposed, unguarded, and high voltage energized equipment.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Andrew Lee Warnick demands judgment against the defendant, in an amount in excess of $75,000 plus pre-judgment and post-judgment interest, and for costs herein expended.

## COUNT II -- NEGLIGENCE, GROSS NEGLIGENCE, AND WANTON AND RECKLESS DISREGARD FOR HUMAN LIFE ANDREW LEE WARNICK V. DELMARVA POWER & LIGHT COMPANY, POTOMAC ELECTRIC POWER COMPANY, PEPCO HOLDINGS, LLC, AND EXELON CORPORATION

66. Plaintiff incorporates herein by reference the foregoing paragraphs as though more fully set forth at length.

67. The Utility Defendants, as providers of electricity, owed a duty of care to the public, including Andrew Lee Warnick, who was an invitee of the Oceana 1 Condominium, to properly maintain and safeguard against access to the high-voltage electrical power substation located inside the Oceana 1 Condominium to persons such as Andrew Lee Warnick.

68. The Utility Defendants had a duty to exercise reasonable care to reduce and guard against the extreme hazards to which its customers and the general public may be subjected.

69. Certain circumstances require the highest degree of attention and care in the design, installation, construction, and maintenance of facilities that present an unusually high risk to public welfare.

70. Electricity is a highly dangerous force.

71. The transmission of electricity through a facility such as the Electrical Substation presents an unusually high risk to public welfare.

72. The transmission of electricity through a facility such as the Electrical Substation involves a risk of death or serious bodily harm.

73. In light of the gravity of the potential harm, those who transmit electrical current must exercise a correspondingly high degree of care.

74. The Utility Defendants, as providers of electricity, had a duty to observe such care as is commensurate with the danger involved.

75. The Utility Defendants, as providers of electricity, had a duty to exercise the closest attention and make the most careful precautions to prevent injury to others.

76. The Utility Defendants, as providers of electricity, had a duty to exercise a very high degree of care to avoid the risk of death or serious bodily harm to others.

77. The Utility Defendants, as providers of electricity, had a duty to construct, install, maintain, and operate the Electrical Substation in accordance with accepted good engineering practice in the electric industry to assure, as far as reasonably possible, the safety of others.

78. The Utility Defendants, through their representatives, managers, employees, and agents, negligently, carelessly, and recklessly designed, constructed, installed, and operated the Electrical Substation such that it was inherently and unreasonably dangerous, unsafe, unsecure and likely to cause injury.

79. The Utility Defendants, through their representatives, managers, employees, and agents, failed to exercise reasonable care to warn trespassers of the condition and risks involved.

80. The Utility Defendants' negligent, grossly negligent, reckless, and willful acts and omissions caused severe, life-threatening, permanent, and disfiguring injuries to Andrew Lee Warnick.

81. The incident described above was caused solely by the negligent, grossly negligent, reckless, and careless acts of the Utility Defendants through their representatives, managers, employees, and agents, including, but not limited to the following:

   a. failing to design, construct, install, maintain, and operate the Electrical Substation in a safe manner;

   b. failing to provide essential safeguards to prevent persons from being electrocuted;

   c. failing to properly secure and monitor access to the Electrical Substation;

d. providing unqualified and untrailed persons an unlabeled key to access to the Electrical Substation;

e. designing, constructing, and installing the Electrical Substation in an unsafe and inherently dangerous layout with energized parts and equipment sticking out into the room;

f. designing, constructing, and installing the Electrical Substation in an unsafe and inherently dangerous layout by placing energized parts and equipment immediately inside the unsecured door to the Electrical Substation;

g. failing to safeguard against inadvertent or accidental close proximity or contact with energized equipment;

h. failing to enclose or place guards around exposed energized equipment carrying 7,200 volts of electricity;

i. failing to enclose energized electrical equipment in an area that is open to unqualified persons;

j. failing to warn that the room contained exposed and unguarded energized equipment carrying at least 7,200 volts of electricity such that electrical shock or electrocution could result from mere close proximity to or unintended contact with exposed component parts;

k. failing to place adequate and conspicuous warnings on the energized and exposed equipment;

l. failing to place adequate and conspicuous warnings anywhere inside the Electrical Substation;

m. failing to inspect and maintain the Electrical Substation;

n. failing to warn or of the danger of arcing of electricity in close proximities;

o. failing to provide any instructions or warnings advising unauthorized persons that electricity can arc from unguarded energized electrical equipment;

p. failing to warn that the Electrical Substation lacked essential safeguards to prevent persons from being electrocuted;

q. failing to warn or instruct about the special clothing or equipment that an individual must wear before accessing the Electrical Substation;

r. failing to monitor or inspect the premises for signs of access by individuals who were not designated Utility Defendant employees;

s. failing to take action to further secure the Electrical Substation when the Utility Defendants knew or should have known that the Electrical Substation was being accessed by individuals who were not designated Utility Defendant Employees.

82. The Utility Defendants negligently and recklessly failed to provide complete and adequate warnings as to the consequences of close proximity to exposed, unguarded, energized electrical equipment that was accessible to unqualified persons.

83. As a further result of the Utility Defendants' negligence, carelessness, and recklessness, the Electrical Substation did not comply with industry customs, procedures, and safety standards and, as such, was inherently and unreasonably dangerous and unsafe.

84. At all times discussed herein, Andrew Lee Warnick was free of negligence or contributory negligence, did not assume any risks, and in no way contributed to the happening of this incident or his injuries.

85. As a direct and proximate result of the Utility Defendants' negligence and carelessness, Andrew Lee Warnick came into close proximity to and/or accidentally made

contact with the exposed and unguarded energized equipment that the Utility Defendants placed immediately inside the door to the Electrical Substation.

86. As a direct and proximate result of the Utility Defendants' negligence and carelessness, 7,200 volts of electricity arced into and passed through Andrew Lee Warnick body, causing the serious injuries and damages detailed above.

87. As a further direct and proximate result of the Utility Defendants' negligence and carelessness, Andrew Lee Warnick has suffered serious and permanent injuries as detailed above; has suffered scarring and disfigurement; has suffered and will suffer in the future pain of the body and mind; has suffered disfigurement and deformity and associated humiliation or embarrassment; has suffered and will suffer inconvenience; has incurred and will incur in the future medical and related expenses; has been deprived of earnings; and has suffered and will suffer in the future other damages.

88. At all relevant times mentioned herein, Andrew Lee Warnick was free of negligence, including contributory negligence, did not assume any risks, and in no way contributed to the serious and permanent injuries he sustained as the result of the Utility Defendants' failure to adequately enclose and safeguard electrified equipment at the Electrical Substation.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Andrew Lee Warnick demands judgment against the defendant, in an amount in excess of $75,000 plus pre-judgment and post-judgment interest, and for costs herein expended.

## COUNT III
## PUNITIVE DAMAGES

89. Plaintiff incorporates herein by reference the foregoing paragraphs as though more fully set forth at length.

90. The Utility Defendants' acts and omissions detailed herein constitute wanton or reckless disregard for the rights and safety of Andrew Lee Warnick.

91. The Utility Defendants' acts and omissions detailed herein were extreme and outrageous, in reckless disregard for the rights and safety of Andrew Lee Warnick.

92. The Utility Defendants' acts and omissions detailed herein were done with wanton or reckless disregard for human life.

93. The Utility Defendants' acts and omissions detailed herein were of an extraordinary or outrageous character and, as such, may be considered the legal equivalent of actual malice.

94. The Utility Defendants' acts and omissions detailed herein were willful and/or malicious.

95. As a result of the Utility Defendants' wanton or reckless acts and omissions detailed herein, Andrew Lee Warnick suffered severe and permanent injuries, including but not limited to severe burns, requiring multiple surgeries, including skin grafts and amputation.

96. The Utility Defendants are liable to Andrew Lee Warnick for punitive damages.

WHEREFORE, with respect to each of the Counts set forth herein, Plaintiff Andrew Lee Warnick demands judgment against the Utility Defendants, in an amount in excess of $75,000 plus pre-judgment and post-judgment interest, and for costs herein expended.

TRIAL BY JURY IS DEMANDED.

By: *Kenneth M. MacLeay*
Counsel

Date of Signing: /- 17 , 20 23 .

Signature: _____

Name:    Kenneth G. Macleay

Bar #:   09403

Law Firm: Macleay Law Firm LLC

Address: 410 Severn Ave, Building B, Annapolis, Maryland 21403

Telephone: 301-780-9253

E-mail: ken@THEKGMLAW.COM

-18-