

Veva 14, Suite 404
1777 Sentry Parkway West
Blue Bell, PA 19422
610-400-1970 **office**
610-850-9994 **fax**

**www.devinetimoney.com**

Patrick C. Timoney
Direct Dial: 610.400.1970 ext. 102
Email: ptimoney@devinetimoney.com

September 12, 2023

**Via Electronic Filing System**
The Honorable A. David Copperthite
United States District Court
District of Maryland
101 West Lombard Street
Chambers 8B
Baltimore, MD 21201

   **RE:** **Warnick v. Delmarva Power & Light**
      **Docket No.: 23-cv-175**

Dear Judge Copperthite:

   This letter is written as a follow-up to the paperless Order entered by Your Honor in this matter on August 8, 2023 regarding the discovery letter and response filed at ECF Nos. 28,29.

**Responses to Interrogatories and Document Requests.**

   On August 2, 2023, Plaintiff filed a letter with the Court seeking Answers to Interrogatories and Request for Production of Documents that were propounded upon Defendant on June 14, 2022. On August 3, 2023 counsel for Defendant provided Defendants Answers to Interrogatories. A copy of these Answers (which incorporate Plaintiff's Interrogatories) are attached hereto as "Exhibit A." On August 4, 2023, counsel for Defendant provided Responses to Requests for Production of Documents. A copy of these written responses (which incorporate Plaintiffs Requests) are attached hereto as Exhibit B."

   Defendants Answers to Interrogatories and Responses to Document Request were deficient and incomplete. On August 17, 2023, counsel for Plaintiff sent counsel for Defendant a deficiency letter relating to the incomplete discovery responses, a copy of which is attached as "Exhibit C." On August 28, 2023, counsel for Defendant sent a response to Plaintiff's Counsel, a copy of which is attached as "Exhibit D." In the August 28, 2023 letter, counsel for Defendant stated "we will prepare a privilege log." No such privilege log has been provided.

On August 31, 2023, counsel for the Plaintiff responded with a narrowed deficiency letter, a copy of which is attached as "Exhibit E."   On September 7, in a continued effort to resolve outstanding discovery issues, counsel for Plaintiff called counsel for the defendants and requested a response to the August 31 letter regarding outstanding discovery issues as well as the promised privilege log to allow counsel for Plaintiffs to assess the privilege claims.  To date, no further response and no further documents or privilege log have been provided.

As set forth in plaintiff's letter dated August 31, 2023, Plaintiff continues to seek full responses to Interrogatories 1, 14, 15, 18, 21, 22 as well as full responses to Document Requests 7, 8, 9, 10, 11, 12, 16, 18.

**Deposition of Defendant Employee Chad Potter**

On August 8, counsel for the Defendant offered September dates when they could be available for the deposition of Defendant's employee Chad Potter.  Plaintiff's counsel responded that could accommodate all dates provided by defense counsel.  Counsel for Defendant has since failed to finalize a date for Mr. Potter's deposition.  On August 31, counsel for Defendant sent an email stating "We still don't have confirmation of Mr. Potter's availability. We will keep Patrick in the loop as soon as we have concrete information."  On September 7, Plaintiff's counsel sent another inquiry to schedule Mr. Potter's deposition.  Defendant has not responded with any dates.

Respectfully submitted,

Patrick C. Timoney

PCT/mel

Cc:   Phillip R. Zuber, Esquire
      Mark T. Foley, Esquire
      Ken Macleay, Esquire

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ANDREW WARNICK           *

         Plaintiff,      *

v.                  *     Case No. 1:23-cv-00175-RDB

DELMARVA POWER & LIGHT CO.     *

         Defendant.     *

*     *     *     *     *     *     *     *     *     *     *     *

## <u>DEFENDANT'S ANSWERS TO INTERROGATORIES</u>

      The Defendant, Delmarva Power & Light Co. ("DPL"), through counsel,

submits the following Answers to Plaintiff's Interrogatories.

      In accordance with F.R.Civ.P. Rule 33, the information contained in these

Answers is not necessarily based upon personal knowledge, but includes

information gathered by and through counsel. The answers have been prepared by

defense counsel, and the word usage, phraseology and sentence structure are his.

      <u>INTERROGATORY #1</u>: List all electrical equipment or components
contained inside the Electrical Room as of September 9, 2021 and for each
such equipment or component state:

         a.     its owner as of September 9, 2021;
         b.     the party responsible for maintaining it as of September 9, 2021
         c.     the date it was first installed;
         d.     whether it was energized as of the morning of September 9, 2021;
         e.     if energized, set forth the expected range of voltage of
              such energized part during normal operation conditions;
         f.     the maintenance schedule for such equipment of component
              part as of September 9, 2021;
         g.     the scheduled obsolescence date of for the particular
              equipment of component part.

      <u>**ANSWER #1:**</u> The room – i.e., the physical space that the equipment was in

was owned by the condominium. The access door and the hardware on it, including



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 2

the lock set, was owned by the condominium. The electrical equipment and "components" in the "electrical room" (as defined by Plaintiff) were owned by DPL. DPL was responsible for maintaining its equipment, if and to the extent required. See also Answer No. 13, which is incorporated herein.

The electrical equipment was installed in 1974. On September 9, 2021, despite a clear and obvious warning of dangers and the hazards of serious injury or death in the room, and without the benefit of appropriate training or protective equipment, before Plaintiff entered the locked electric room, and purposefully touched the open A phase switch, the electric service was energized. The three-phase service carried 7,200 volts, phase to phase. The electric equipment in this locked room with a clear warning sign did not require regular or routine maintenance or have scheduled obsolescence.

The electrical equipment included the following:

1. Three (3) open solid blade disconnects, phases A, B and C. These disconnects have a primary voltage of 7200 volts.

2. A dry-type transformer.

3. Three (3) sand fuses associated to the dry-type transformer.



INTERROGATORY #2: Specifically state your name for the parts circled in the following picture and describe where such parts appear on any line diagrams, plan views or voltage diagrams produced in this matter in response to Requests for Production of Documents.



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 3



**ANSWER #2:** A phase switch.

INTERROGATORY #3: List any and all codes, governmental standards, electrical utility standards, manufacturer's instructions or recommendations or in house standards, protocols or procedures that were referenced by you in the installation or maintenance or securing of the Electrical Room or any of the component listed by you in response to the prior interrogatory.

**ANSWER #3:** DPL did not install, maintain, or secure the Electrical Room.  With respect to the components identified in the prior interrogatory, it is not known specifically want standards or codes were considered by designers or installers of the equipment nearly 50 years ago. As a matter of routine engineering practice, DPL would have followed all required industry codes and accepted industry practices in effect in 1974 for the installation of this type of primary electric service on this type of



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 4

structure. The building, including all common area rooms in the building, were owned

by the condominium and the doors to rooms on the property and the hardware

installed on the doors were the property of the condominium.

INTERROGATORY #4: State whether you are aware of any codes, government standards, electrical utility standards manufacturer's instructions or recommendations or in house standards, that call for any change or adjustment in the scheduled obsolescence date or inspection or maintenance of any of the equipment or component parts listed in your response to interrogatory 1 above based upon proximity to the ocean or other salt-water environment.

**ANSWER #4**:  None.

INTERROGATORY #5: Identify each or your employees and departments who or which was responsible for safety or security of the Electrical Room or of any of the electrical equipment or component parts identified in response to interrogatory 1 above as of September 9, 2021.

**ANSWER #5**: The safety and security of the Electrical Room was

the responsibility of the condominium and its agents. The door, doorknob, door lock,

and key to the door's lock, were purchased, owned, installed, and maintained by the

condominium and its agents.  Persons entering the room were expected to adhere to

warning signs and to obey OSHA Regulations and safety practices for energized

equipment and wear PPE when entering and working around energized electrical

equipment.

INTERROGATORY #6: Identify all individuals or categories of individuals who you considered to be "authorized" to enter the Electrical Room as of September 9, 2021.

**ANSWER #6**: Delmarva Power placed a sign on the door to the Electrical



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 5

Room. A sign was clearly by and from Delmarva Power. In clear, large, bold letters it warned: "**DANGER. KEEP OUT! Hazardous voltage inside.  Authorized personnel only. Will shock, burn, cause severe injury or death**." The authorized personnel were clearly those authorized by Delmarva Power to come in proximity to the energized equipment, persons with appropriate knowledge, experience and equipment to protect themselves from the "hazardous voltage inside."  Furthermore, "authorized personnel" are "qualified persons" as defined in 29 CFR 1910.301(e), which adopts the definition provided in 29 CFR 1910.399 and also as defined in 29 CFR 1926.400(e) which adopts the definition provided in 29 CFR 1926.449.

INTERROGATORY #7: What were your PPE requirements for individuals to enter the Electrical Room as of September 9, 2021.

**ANSWER #7:** See Attachment A for the PPE that DPL personnel were required to use in proximity to the equipment.  DPL's PPE requirements complied with 29 CFR 1910.137.

INTERROGATORY #8: Identify any and all measures taken by you from the date that the first equipment or component parts were installed in the Electrical Room to the present to limit access to the Electrical Room and/or to identify which individuals are deemed qualified and/or authorized to enter the Electrical Room.

**ANSWER #8:**  DPL objects to this interrogatory on the grounds that it contains conditions precedent to the admission of facts and improperly assumes that DPL had or has the legal right to physically limit access to the Electrical Room.  Without waiving objections, the Electrical Room, its door, doorknob, door lock, and key to the lock, were all purchased, installed, maintained, owned, and controlled by the condominium



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 6

and/or its agents.  DPL did not own the real property upon which the Electrical Room

is situated, nor did it enjoy a leasehold, easement, or any other proprietary,

possessory, or non-possessory interest or right in the property.  Therefore, DPL was

not legally capable of unilaterally physically restricting access to the room.  DPL also

relies upon Section 6-303 of the Criminal Law Article of the Maryland Code which

declares tampering with DPL's electric utility equipment to be a criminal offence.  In,

addition, the room was locked. A clear and prominent warning sign was placed on the

door. It warned of the dangers associated with an unqualified and unauthorized entry.

INTERROGATORY #9: Identify the individual and/or party who installed any
and all locks that were on the door of the Electrical Room (see the first photograph in
definition Q set forth above) as of the morning of September 9, 2021 and list the
names of all parties who were known by you to you to have possession of any keys to
such locks or to otherwise have the ability to unlock the door and enter the Electrical
Room as of the morning of September 9, 2021.

**ANSWER #9:** DPL has no direct information regarding who installed the lock on

the Electrical Room door. Evidence exists, however, that as of September 9, 2021, the

original or at minimum an earlier door lockset for the Electrical Room was removed

and replaced with a smaller door knob and different lock. As far as it can determine,

Delmarva was not consulted or contacted regarding the decision to replace the door

hardware or to use universal key system or any decision to disseminate keys that

would unlock the door. Delmarva Power did not keep or maintain any key to the

Electrical Room. Instead, the building owner or its agent maintained a "lock box"

wherein Delmarva Power could access the key to Electrical Room as needed.

INTERROGATORY #10: Identify the individual and/or party who installed any



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 7

and all locks on the door of the Electrical Room (see the first photograph in definitions Q set forth above) at any time after the Accident up to the present date and list the name of all parties known to you to have possession of any keys to such locks or to otherwise have the ability to unlock the door and enter the Electrical Room as of the morning of September 9, 2021.

**ANSWER #10:** At the request of the customer Condominium, DPL installed a secondary lock on the door of the Electrical Room after the incident in light of the fact that the condominium was made aware that a member of its maintenance personnel was not obeying the clearly posted warning sign instructing them to refrain from unlocking and entering the room.  Distribution Supervisor Mr. Larry Jarvis arranged for the installation of the lock at the request of, and with the approval of, the condominium. Regarding who had possession of any keys to any locks to the room as of September 9, 2021, DPL did not own or possess any key to the room and has no knowledge of who possessed such a key.  DPL was aware that a copy of the key resided in lockbox on the premises for its use.

INTERROGATORY #11: List any and all changes made to any equipment or component parts listed by you in response to interrogatory 1 above from the date of the Accident to the present.

**ANSWER #11:**  None.

INTERROGATORY #12:  Identify your primary contact person at the Premises for any issues relating to the Electrical Room or access to the Electrical room as of September 9, 2021.

**ANSWER #12:** No "primary contact person" was designated or identified by the building owner or its agent.

INTERROGATORY #13:  Describe any and all internal policies, protocols or procedures for the inspection maintenance securing the type of electrical equipment or



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 8

component parts listed in response to interrogatory no. 1 above from the date the equipment or parts were first installed through September of 2021.

**ANSWER #13:** The electrical equipment did not require scheduled inspections or maintenance. It is not clear what Plaintiff means by "securing" electrical equipment or "component parts." The room was locked. A clear and obvious warning sign was on the entrance door. It advised that entry involved risks of serious injury or death. DPL had no company policies, protocols or procedures relating to the inspection or maintenance of this type of equipment in this setting.

INTERROGATORY #14: Describe any and all methods utilized by you to monitor or inspect the Electrical Room from the date the equipment or parts were first installed through September of 2021 for the purpose of confirming unauthorized or unqualified persons did not have access to the Electrical Room.

**ANSWER #14:** The Electrical Room, its door, doorknob, door lock, and key to the lock, were all purchased, installed, maintained, owned, and controlled by the condominium and/or its agents.  DPL did not own the real property upon which the Electrical Room is situated, nor did it enjoy a leasehold, easement, or any other proprietary, possessory, or non-possessory interest or right in the property.  Therefore, DPL was under no legal obligation to monitor "the Electrical Room" or its equipment in this locked room. It was under no legal obligation to "detect" "unauthorized" entry or entry by unqualified persons or to investigate if or how persons might gain access to the room. It was under no legal obligation to inspect the room or its equipment for unauthorized entry or access. It did not do so as a matter of routine or practice.  DPL owns electric equipment at nearly all of its hundreds of thousands of customer-owned



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 9

properties and it is impossible, infeasible, and cost-prohibitive to attempt to monitor or

inspect all such equipment residing on private property in the absence of a reported or

discovered electrical problem.

INTERROGATORY #15: List any and all personal protective clothing or equipment that persons employed by would be required to wear in order to enter the Electrical Room at any time from September of 2021 through to the present and for each such required clothing or equipment identify the code, standard or internal policy or procedure (if any) that sets forth this requirement.

**ANSWER #15:** Objection. What would be required to be worn by DPL

authorized personnel after September 2021 is not relevant. DPL's PPE requirements

complied with 29 CFR 1910.137.

INTERROGATORY #16: List any and all tools that persons employed by would be required or recommended to bring with them in order to enter and perform work the Electrical Room at any time from September of 2021 through to the present and for each such tool identify the code, standard or internal policy or procedure (if any) that sets forth this requirement or recommendation.

**ANSWER #16:** Objection. As to "perform work [in] the Electrical Room" the

question lacks sufficient facts to permit DPL to provide a response (i.e., the answer

may depend on a variety of issues, including the kind of work and/or the purpose). As

to "tools to enter," other than obtaining from the lock box the key to the room, no

"tools" as such were required by DPL to enter the locked Electrical Room.

INTERROGATORY #17: With respect to any codes, standards or internal policies or procedures described or referenced in response to any interrogatory listed above, identify the individual employed by you who was primarily responsible for ensuring that your employees were working in compliance with such codes, standards policies or procedures with respect to work or equipment or worksites located in or near Ocean City, Maryland.



**ANSWER #17:** Not applicable (i.e., no codes, standards or internal policies are

*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 10

specifically described or referenced in the answers).

INTERROGATORY #18: Set forth each and every functional or operational reason why the energized electrical equipment inside of the Electrical Room in September of 2021 could not have been enclosed inside of cabinets or why there was no physical barrier between the energized equipment and persons entering the room.

**ANSWER #18:** DPL objects to this interrogatory on the grounds that it seeks expert opinions.  Without waiving said objections, the cabinets and barriers referenced in this interrogatory are not required by 29 CFR 1926.403(j)(2).

INTERROGATORY #19:  After the equipment and parts were initially installed in the Electrical Room through until the present, did you do any work, make any repairs, or effect any changes to or inspect the equipment or component parts in the Electrical Room? If yes, please describe such repairs/changes or inspections and when these repairs / changes or inspections took place.

**ANSWER #19:** No changes were made. As to inspections, see Answer No. 13.

INTERROGATORY #20: State the date and time when the defendant first learned of the Accident.

**ANSWER #20:** Plaintiff has chosen to characterize the event as "the Accident," even though evidence exists that Plaintiff purposefully touched the energized equipment despite written and oral warning. On September 9, 2021, at 15:06 Bay dispatch received a report of a possible electric contact injury (member of public, not DPL employee) at 8201 Atlantic Avenue in Ocean City Maryland.

INTERROGATORY #21: Identify any and all employees who were on site at the Premises within the first week following the accident state their reason for being on the Premises.



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 11

**ANSWER #21:** The following DPL employees were present on site at the Premises following the accident:

     Jim Stephenson, Trouble man
     Chad Potter, Distribution Supervisor
     Roland Waters, Lead Lineman
     Andrew Sindlery, Journeyman
     Ira Siegal, Apprentice Lineman
     Joe Wheeler, Apprentice Lineman
     Ronald Lerum, Sr., Claims Case Manager

INTERROGATORY #22: Within the past ten (10) years, has defendant received or become aware of any reports, claims, complaints or lawsuits resulting from injuries alleged to be suffered as a result of individuals not employees by defendant gaining access to energized electrical equipment owned by you?

**ANSWER #22:** Objection. Other claims and lawsuits are irrelevant and inadmissible. *Lai v. Sagle*, 373 Md. 306, 818 A.2d 237 (2003). Without waiver of this objection, DPL is not aware of any other instance in the last ten years where a person not employed by DPL unlocked and entered the locked electric room containing DPL primary voltage and, despite a clear and strong warning of dangers and the hazards of serious injury or death, without the benefit of appropriate training or protective equipment, willingly touched an open phase switch.

INTERROGATORY #23:  For each report, claim, complaint or lawsuit mentioned in your answer to the previous interrogatory, state the date and location of the alleged injury; the name, address and phone number of each alleged injured party and his/her attorney; and the Court term and number for each lawsuit.

**ANSWER #23:**  N/A.



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 12

**I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING ANSWERS TO INTERROGATORIES ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

Ronald D. Lerum, MSM, AIC, CCLA
Claims Case Manager
Delmarva Power and PEPCO Region
Delmarva Power & Light Company



*Warnick v. DP&L, et al.*
Defendant's Answers to Interrogatories
Page 13

Respectfully submitted,

SASSCER, CLAGETT & BUCHER

by:      /s/ Phillip R. Zuber, Esq.
Phillip R. Zuber, Esquire, #03501
5407 Water Street, Suite 101
Upper Marlboro, MD 20772
(301) 627-5500/ (301) 627-4156 fax
pzuber@scblawyers.com
*Counsel for Delmarva Power & Light Co.*



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANDREW WARNICK | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 1:23-cv-00175-RDB |
| | * | |
| DELMARVA POWER & LIGHT CO. | * | |
| | * | |
| Defendant. | * | |

*    *    *    *    *    *    *    *    *    *    *    *

**NOTICE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of August 2023, a copy of the foregoing

**Defendant's Answers to Interrogatories** was electronically sent to:

Kenneth G. Macleay, Esq.
Macleay Law Firm, LLC
410 Severn Ave., Building B
Annapolis, MD 21403
ken@thekgmlaw.com
*Counsel for Plaintiff*

Patrick C. Timoney, Esq.
Gregory M. McNamee, Esq.
Devine Timoney Law Group
Veva 14, Suite 404
1777 Sentry Pkwy. West
Blue Bell, PA 19422
ptimoney@devinetimoney.com
gmcnamee@devinetimoney.com
*Counsel for Plaintiff*

Respectfully submitted,

SASSCER, CLAGETT & BUCHER

by:      /s/ Phillip R. Zuber, Esq.
Phillip R. Zuber, Esquire, #03501
5407 Water Street, Suite 101
Upper Marlboro, MD 20772
(301) 627-5500/ (301) 627-4156 fax
pzuber@scblawyers.com
*Counsel for Delmarva Power & Light Co.*



# EXHIBIT "B"

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ANDREW WARNICK        *

          Plaintiff,     *

v.                      *    Case No. 1:23-cv-00175-RDB

DELMARVA POWER & LIGHT CO.   *

          Defendant.     *

  *     *     *     *     *     *     *     *     *     *     *     *

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### REQUESTS FOR PRODUCTION OF DOCUMENTS

The Defendant, Delmarva Power & Light Company ("DPL"), through counsel,

submits the following Responses to Plaintiff's Requests for Production of Documents.

*     *     *

REQUEST #1:      Any and all drawings, schematics and 1-line-electrical diagrams, other diagrams, plan view and any documents indicating the voltage class of equipment and other document of any type that depicts or is intended to depict the Electrical Room or any pieces of equipment of component parts contained in the Electrical Room.

**RESPONSE #1:      If DPL possesses any responsive documents, they will be produced.**

REQUEST #2:      Any document of drawings relating to any proposed upgrades to the Electrical Room or equipment or component part replacements, whether such upgrades or replacements were implemented or not.

**RESPONSE #2:      DPL has not found any documents in response to this request.**

REQUEST #3:      Any documents or records that pertain to the installation of the Equipment owned and/or installed by you in the Electrical Room.

**RESPONSE #3:      If DPL possesses any responsive documents, they will**



*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 2

**be produced.**

REQUEST #4: Any document or records that pertain to the maintenance and/or replacement of Equipment owned or installed by you in the Electrical Room.

**RESPONSE #4: DPL has not found any documents in response to this**

**request.**

REQUEST #5: Any manufacturer's or seller's instructions or warnings pertaining to any equipment owned or installed by you in the Electrical Room that was present in the room in September of 2021.

**RESPONSE #5: Given that the installation occurred nearly 50 years**

**ago, DPL has not found any documents in response to this request.**

REQUEST #6: Any and all records of inspections of the Electrical Room, including any pieces of equipment or component parts contained in the electrical room or of the door to the Electrical Room or any locks installed in or affixed to the door of the Electrical Room from the date that electrical equipment was first installed equipment in the Electrical Room to the present.

**RESPONSE #6: DPL has not found any documents in response to this**

**request.**

REQUEST #7: Any and all contracts or agreements between you and any party relating to the Premises or the Electrical Room.

**RESPONSE #7: Objection. This Request is not limited to contracts or**

**agreements before the event on September 9, 2021. Post-incident contracts or**

**agreements are not relevant. Without waiver of these objections, DPL has not**

**found any documents relating to such contracts or agreements before**

**September 9, 2021.**

REQUEST #8: Any and all letter, emails, correspondence or records of



*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 3

any communications between you and any other party relating to securing the Electrical Room from access by unqualified parties or describing persons or categories of person who are or may permitted access to the electrical room or to the location and proper handling and safeguarding of keys to the Electrical Room.

**RESPONSE #8:     Objection.  The Request is not limited to restricted to communications before the event on 9-9-2021.  Post-incident communications are not relevant and to the extent the communications were carried out by counsel, they would reflect counsel's work product efforts.  Without waiver of these objections, DPL has not found any documents relating to such communications before 9-9-2021.**

REQUEST #9:     Any and all letter, emails, correspondence or records of any communications between you and any other party relating to or describing persons or categories of person who are or may permitted access to the electrical room or to the location and proper handling and safeguarding of keys to the Electrical Room.

**RESPONSE #9:   See the objection and response to Request No. 9.**

REQUEST #10:     Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols referenced by you or which pertain to the installation, repair, maintenance, inspection or scheduled obsolescence of any of the equipment or component parts located in the Electrical Room belonging to You.

**RESPONSE #10:     The Defendant is not obligated to produce publicly available laws, codes, regulations and industry standards.  It will produce, if any, documents created by DPL relating to the requested matters.**



REQUEST #11:     Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols referenced by you or which were published, prepared or promulgated within the past twenty years and pertain to securing the Electrical Room or preventing access to any of the equipment or

*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 4

component parts located in the Electrical Room belonging to You for the purpose of preventing injuries by persons not employed by You.

**RESPONSE #11**: **The Defendant is not obligated to produce publicly available laws, codes, regulation and industry standards. Without waiver, please see 29 CFR 1926.403(i)(2) produced herein.**

REQUEST #12:      Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols referenced by you or which were produced, published or promulgated within the past twenty years and pertain to permitting access to any of the equipment or component parts of the type located in the Electrical Room in September of 2021 belonging to You.

**RESPONSE #12**: **The Defendant is not obligated to produce publicly available laws, codes, regulations and industry standards.  Without waiver, please see regulation produced in response to Requests 11, 14 and 15 generally responding to this request.**

REQUEST #13:      Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols which were referenced by you or published, prepared or promulgated from the date of the initial installation of the subject equipment to the present pertaining to inspecting any of the equipment or component parts or the type located in the Electrical Room belonging to You including, but not limited to such codes, standards, recommended practices and procedures and protocols relating to response to storms on ocean-front properties or properties located close to the ocean.

**RESPONSE #13**:  **The Defendant is not obligated to produce publicly available laws, codes, regulations and industry standards.  Without waiver, DPL has not found any documents responsive to this request.**



REQUEST #14:      Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols referenced by you or which were published, prepared or promulgated from the date of initial installation to the

*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 5

present that pertain to personal protective equipment, or clothing that must be worn by individuals working inside a room containing any of the same type of energized equipment or component parts that were located in the Electrical Room in September of 2021.

**RESPONSE #14**:  **The Defendant is not obligated to produce publicly available laws, codes, regulations and industry standards.  Without waiver, please see 29 CFR 1910.137, produced herein.**

REQUEST #15:      Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols referenced by you or which or which were published, prepared or promulgated from the date of initial installation to the present which pertain to actions that must be taken or training received before an individual can be permitted to enter a room containing the same or similar type of energized equipment or component parts that were located in the Electrical Room in September of 2021.

**RESPONSE #15**:  **The Defendant is not obligated to produce publicly available laws, codes, regulations and industry standards. Without waiver, please see 29 CFR 1910.301(e); 29 CFR 1910.399; 29 CFR 1926.400(e); and 29 CFR 1926.449 produced herein.**

REQUEST #16:      Any and all document pertaining to any warnings located on the Electrical Room door on in the Electrical Room from the date of initial installation to the present.

**RESPONSE #16**:      **Objection.  This request is patently overbroad. Documents that merely "pertain to"  a subject (e.g., "any warnings"), clearly and impermissibly include a request for attorney-client communications and work product generated or created for this matter.  Such documents are not discoverable.  Photographs of the warning sign on the entrance door on 9-9-**



*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 6

2021 have been produced.  Other documents prepared in the ordinary course of

business, including investigative reports by others, will be produced.

REQUEST #17:      Any photographs or videos of the Premises or Electrical
Room or of Mr. Warnick.

**RESPONSE #17:      Items responsive to this request have already been**

**produced.**

REQUEST #18:      All statements and communications of any and all
witnesses including any and all statements of Plaintiff(s) and Defendant(s), including
taped recordings, whether transcribed or not, as well as all written statements.

**RESPONSE #18:  The Defendant does not have any written or recorded**

**statement of the Plaintiff.  As to statements obtained from witnesses as a part of**

**the investigation or defense of this matter, pursuant to Rule 26(b)(3)(A),**

**ordinarily, a party may not discover documents and tangible things that "are**

**prepared in anticipation of litigation or for trial by or for another party or its**

**representative (including the other party's attorney…insurer or agent)".**

**Documents prepared by others or by DPL in the ordinary course of business will**

**be produced.**

REQUEST #19:      The name, home and business address, background and
qualifications of any and all persons in the employ of Defendant, who in anticipation
and/or preparation of litigation, is expected to be called to trial.

**RESPONSE #19:      Objection. This is not a request for documents.**

REQUEST #20:      Any and all documents and communications containing the
name and home and business addresses of all individuals contacted as potential
witnesses.



*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 7

**RESPONSE #20**:   **This request seeks to learn the work product assess of counsel on what witnesses might be called at trial.  Plaintiff is not entitled to learn such matters in discovery.**

REQUEST #21:      Reports, communications, and/or documents prepared by any and all experts who will testify at trial.

**RESPONSE #21**:  **When retained experts are identified, except for draft reports of the expert and documents relating to communications with any retained expert (which are protected from discovery under F.R.Civ.P. Rule 26(b)(4)(B) and (C)), responsive documents will be produced if such documents have not already been produced in discovery.**

REQUEST #22:      Reports, manuals, textbooks, policy sheets or other documents, or communications or electronic data or emails which any said expert, potential expert, witness or potential witness has consulted or reviewed as a result or in preparation of this litigation or will consult or review.

**RESPONSE #22**:  **Objection.  Plaintiff is not entitled to learn in discovery what a "potential expert" or a witness or a "potential witness" "consulted or reviewed" in preparation of the litigation or "will consult or review."  As to retained experts to be called at trial, if responsive documents come into the possession of DPL, they will be produced.**

REQUEST #23:      Resumes and qualifications of any and all experts who will testify at trial.

**RESPONSE #23**:  **Objection.  A request for "qualifications" is not a request for documents.  As to "resumes", with or after the identification of**



*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 8

**retained experts, the CVs of the experts will be provided.**

REQUEST #24:     All documents of any nature whatsoever which refer in any way to the Accident and/or the facts or circumstances leading up to and following said Accident.

**RESPONSE #24:   Objection.  This is an absurdly overbroad request.  It clearly and directly seeks discovery of protected work product and privileged communications (i.e., any document" that refers to "the Accident" or facts "leading up to" and "following" the Accident.  There is no reasonable means by which the Defendant can identify every document that "refer[s] in any way" to "facts or circumstances leading up to" or that came after.   This request does not comply with the simple mandate that requests for documents describe the documents being sought with "reasonable particularity."  F.R.Civ.P. Rule 34(b)(1)(A).**

REQUEST #25:     All documents and/or communications relating to any facts on the basis of which it is asserted that the conduct of the Plaintiff(s) contributed to the happenings of the Accident or to the alleged injuries or losses suffered allegedly as a result of this accident.

**RESPONSE #25:   Objection.  This is an improper request.  What is seeks to do is to learn what documents counsel will use or rely on to prove contributory negligence.  Whether a document supports or tends to support a position taken by counsel or a party involves a work product assessment.  Plaintiff is not entitled to discover such assessments.  Without waiver, DPL reserves the right to rely on any relevant non-privileged document produced or**



*Warnick v. DP&L, et al.*
Defendant's Response to Request for Production of Documents
Page 9


**made available in discovery to support its position that Plaintiff was**

**contributorily negligent.**

REQUEST #26:      Any and all documents of any nature whatsoever
referenced or referred to in Defendant's Answers to Plaintiff's Interrogatories.

**RESPONSE #26**:    **No documents are specifically referenced in the**

**Answers.**

Respectfully submitted,

SASSCER, CLAGETT & BUCHER


by:      /s/ Phillip R. Zuber, Esq.
Phillip R. Zuber, Esquire, #03501
5407 Water Street, Suite 101
Upper Marlboro, MD 20772
(301) 627-5500/ (301) 627-4156 fax
pzuber@scblawyers.com
*Counsel for Delmarva Power & Light Co.*



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ANDREW WARNICK           *

            Plaintiff,        *

v.                    *    Case No. 1:23-cv-00175-RDB

DELMARVA POWER & LIGHT CO.    *

            Defendant.      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**NOTICE OF SERVICE**</u>

     I HEREBY CERTIFY that on this 4th day of August 2023, a copy of the

foregoing **Defendant's Response to Request for Production of Documents** was

electronically sent to:

| | |
|---|---|
| Kenneth G. Macleay, Esq. | Patrick C. Timoney, Esq. |
| Macleay Law Firm, LLC | Gregory M. McNamee, Esq. |
| 410 Severn Ave., Building B | Devine Timoney Law Group |
| Annapolis, MD 21403 | Veva 14, Suite 404 |
| ken@thekgmlaw.com | 1777 Sentry Pkwy. West |
| *Counsel for Plaintiff* | Blue Bell, PA 19422 |
| | ptimoney@devinetimoney.com |
| | gmcnamee@devinetimoney.com |
| | *Counsel for Plaintiff* |

                 Respectfully submitted,

                 SASSCER, CLAGETT & BUCHER

       by:      /s/ Phillip R. Zuber, Esq.
                 Phillip R. Zuber, Esquire, #03501
                 5407 Water Street, Suite 101
                 Upper Marlboro, MD 20772
                 (301) 627-5500/ (301) 627-4156 fax
                 pzuber@scblawyers.com
                 *Counsel for Delmarva Power & Light Co.*



# EXHIBIT "C"



DEVINE
TIMONEY

LAW GROUP

Veva 14, Suite 404
1777 Sentry Parkway West
Blue Bell, PA 19422
610-400-1970 **office**
610-850-9994 **fax**

**www.devinetimoney.com**

Patrick C. Timoney
Direct Dial: 610.400.1970 ext. 102
Email: ptimoney@devinetimoney.com

August 17, 2023

**Via Electronic Mail pzuber@scblawyers.com;**
**mfoley@scblawyers.com**
Phillip Zuber, Esq.
Mark T. Foley, Esq.
Sasscer, Clagett & Bucher
5407 Water Street
Suite 101
Upper Marlboro, MD 20772

> RE:  **Warnick v. Delmarva Power & Light**
>        **Docket No.: 23-cv-175**

Dear Mr. Zuber and Mr. Foley:

The purpose of this letter is to address deficiencies in Defendant's responses to Plaintiff's Discovery requests.

I.        <u>**Answers to Interrogatories**</u>

<u>Interrogatory 1</u>: The three sand fuses appear from the pictures to be a different generation from the other equipment in the room.  What is the installation date for those?

<u>Interrogatory 14</u>:  The question was not answered.  I believe from your response that the likely answer is "none," but the answer was not provided.

<u>Interrogatory 15</u>:  The question was not answered.

<u>Interrogatory 18</u>:  The question was not answered. The question relates to feasibility and is within the knowledge of Defendant.

<u>Interrogatory 21</u>:  You did not state the reason for each identified individual being on site on the date of the accident.

Interrogatory 22:  You did not respond to this interrogatory.  As an accommodation to resolve this issue, I am willing to exclude accidents involving above-ground level electrical lines.

**II.      Responses to Document Requests**

As Mark and I discussed, I am confused by the "Will be produced" language, which suggests to me that the document may not be included in what I received.

Request 1:  I don't see drawings or schematics specific to the room and the equipment contained therein and nothing about voltage class of any of the equipment in that room.

Request 2:  I can't tell from your response whether documents were located and produced.

Request 7:  you failed to respond. Post-incident contracts are discoverable, we can argue about relevance at trial.

Request 8: You failed to respond.  Post-incident communications are discoverable unless attorney-client privileged.  Also, if there are privileged documents, I need to see a privilege log that describes the document and the privilege claimed.

Request 9: No response.

Request 10:  No response.  Also, defendant IS obligated to identify with codes standards and practices are referenced by defendant in the normal course of business.

Request 11:  Insufficient Response.  Also, defendant IS obligated to identify with codes standards and practices are referenced by defendant in the normal course of business.

Request 12:  No response.  Also, defendant IS obligated to identify with codes standards and practices are referenced by defendant in the normal course of business.

Request 16:  You state "Other documents …will be produced" I have no way of knowing if you've produced them.

Request 18:  Same issue "will be produced."  I don't know whether all responsive documents have been produced.

Request 20: No response.

Request 24: No response.  The "Accident" is a defined term at paragraph 16 of the instructions.

Request 25: No response.

Can we set up a call over the next week to determine whether these issues can be resolved or need to be submitted to the Magistrate Judge for determination?

Sincerely,

*/s/ Patrick C. Timoney*

Patrick C. Timoney

Cc:     Ken Macleay

# EXHIBIT "D"

PHILLIP R. ZUBER*
THOMAS A. McMANUS
MARK T. FOLEY
FRANK R. JONES*
MICHAEL L. ADAMS
TAYLOR R. KONCEN*
VINAY S. KATAKAM

_____

*ALSO ADMITTED IN D.C.
+ALSO ADMITTED IN PA



SASSCER CLAGETT & BUCHER

100 YEARS OF EXCELLENCE

EST. 1920

LANSDALE G. SASSCER (1893-1964)
HAL C.B. CLAGETT (1916-2010)
JAMES R. BUCHER (1929-2009)
WILLIAM N. ZIFCHAK (1942-2022)

_____

OF COUNSEL:
   SHEILA F. FLESHMAN*+

LA PLATA OFFICE:
   102 Centennial Street, Suite 102
   La Plata, MD  20646
   301-934-2490

Writer's Direct Dial: (240) 510-9216

Writer's E-mail address:
   pzuber@scblawyers.com

August 28, 2023

**<u>VIA ELECTRONIC MAIL ONLY</u>**

Patrick C. Timoney, Esq.
Devine Timoney Law Group
1777 Sentry Pkwy. West
Blue Bell, PA 19422

Re:   *Andrew Lee Warnick v. DPL*
        Our File No. 0299-43523

Dear Patrick:

        This is in response to your letter of August 17, 2023 regarding the sufficiency of DPL's Answers to Interrogatories.

        Answer 1:  The Interrogatory asks for the date the equipment was "first installed."  The Answer provides that information.

        Answer 14: The Answer specifically states "it did not do so as a matter of routine or practice" and it explains why.  The interrogatory was answered.

        Answer 15:  What would be worn by DPL employees is irrelevant. Even so, the Answer states that what would be worn by them is as provided by 29 CFR 1910.137.  Moreover, DPL provided documents relating to its PPE practices.  The Interrogatory was answered.

        Answer 18:  The interrogatory, in essence, asks if it is "possible." That calls for an expert opinion.  The Answer further notes that barriers were not required in this instance.  It is not a question of possibility but whether such was required.  DPL provided an Answer.

        Answer 21:  Each of the persons listed went to the scene.  The reason they went to the scene is because Mr. Warnick decided to unlock

Patrick Timoney, Esq.
August 28, 2023
Page 2

the door, ignore the warning on the door, enter the room, and touch the energized electrical equipment, resulting in his injuries and a contact being made to DPL regarding the incident. That is why they were present.

Answer 22:  The Answer states that DPL received no reports or claims involving circumstances similar to this case.  You are not entitled to information about claims unrelated to the circumstances of this case.

As to the Responses, all responsive documents that were located were produced.  You have all the responsive documents, to the extent they have been found and can be produced.  The responses make clear that if additional documents are found they too will be produced.  Any subsequently produced documents will be sequentially BATES numbered (to distinguish them from previously produced documents).

As to other issues raised by you:

Response 7:  Contracts or agreements after 9-9-21 that merely "relate" to the property "or the Electrical Rom" are not relevant.  They must be relevant to be discoverable (or lead to something admissible in evidence).

Response 8:  Not just attorney-client communications are protected from discovery.  You are not entitled to work product documents – i.e., documents prepared by counsel that reveal counsel's mental impressions, thoughts, legal theories, strategies and efforts.  Counsel for DPL became involved on 9-9-21.  Counsel was involved in communications about or associated with the incident.  We will prepare a privilege log relating to those communications.

Response 9:  The Response should have referenced Response No. 8.  I have the same response.

Response 10:  There was a response.  The request was not to identify (which would be an interrogatory) but to produce such codes.  There is no duty to produce publicly available laws, codes and standards.  They are equally available to you.

Response 11.  Same as response to Request No. 10.

Response 12:  Same response as to Request No. 10.

Patrick Timoney, Esq.
August 28, 2023
Page 3

Response 20:  There was a response, you just don't like it.  The word "assess" should have been "efforts."  But by asking for documents relating to each person "contacted as potential witnesses" you are seeking to discover counsel's work product efforts – who counsel contacted, revealing counsel's belief that the person may assist in the defense.  You are not entitled to that information.  Pepco has otherwise provided information about persons with personal knowledge.

Response 24:  There was a response.  The response points out that the request is absurdly overbroad, as documents of "any nature" that just refer to "the Accident" or facts "leading up to" and after the Accident include every communication counsel has had with his client, his work product memoranda and communications within his office and potential experts.  The Request also fails to meet the minimum requirement of describing documents being sought with reasonable particularity.  What would be a response document that refers to "facts or circumstances" after the Accident but necessarily relating to the Accident?

Response 25:  There was a response.  We provided every document that may be used to support the contributory negligence defense.  But you are not entitled to what will be used to specifically present that defense, what DPL will argue or how it will support it with documents.  Those are all work product matters.

This fairly responds to your concerns.

Very truly yours,

Phillip R. Zuber

PRZ/jvw

Patrick Timoney, Esq.
August 28, 2023
Page 4

bcc:   Brian E. Hoffman, Esq.
       Ms. Lauren Murray

https://scblawyers.sharepoint.com/scb lawyers main/phillip zuber - prz/warnick v dpl/timoney 003 re discovery responses.docx

# EXHIBIT "E"



Veva 14, Suite 404
1777 Sentry Parkway West
Blue Bell, PA 19422
610-400-1970 **office**
610-850-9994 **fax**

**www.devinetimoney.com**

Patrick C. Timoney
Direct Dial: 610.400.1970 ext. 102
Email: ptimoney@devinetimoney.com

August 31, 2023

**Via Electronic Mail pzuber@scblawyers.com;**
**mfoley@scblawyers.com**
Phillip Zuber, Esq.
Mark T. Foley, Esq.
Sasscer, Clagett & Bucher
5407 Water Street
Suite 101
Upper Marlboro, MD 20772

    **RE:**  **Warnick v. Delmarva Power & Light**
       **Docket No.: 23-cv-175**

Dear Mr. Zuber and Mr. Foley:

   This letter is written in response to your letter of August 28, 2023 sent in response to my letter of August 17 about insufficient responses to discovery that were initially served on June 14. This letter represents a last-ditch effort to resolve outstanding discovery issues and sort out which issues will need to be resolved by the Magistrate Judge. I note that a productive discussion on resolving this issues is hampered by the fact that you've not yet produced a privilege log despite the fact that we are not more than 75 days past the date you received the discovery requests.

  I.   <u>**Answers to Interrogatories**</u>

  <u>Interrogatory 1</u>: I don't believe that you have provided me with an accurate installation date for the actual sand fuses that were in the room on the date of the incident and that appear in this photos. I believe my interrogatory was sufficient supecifc as to reference the equipment actually present in the room on the date of the incident. What is the installation date for those?

  <u>Interrogatory 14</u>: The question was not answered. The words "it did not do so as a matter of routine or practice." Does not answer the question, because it does not affirmatively answer whether or not any monitoring or inspection actually took place. I

believe from your response that the likely answer is "none" if, so, please provide that answer on a verified document.

Interrogatory 15:  I am entitled to a verified answer to this question.  I am not required to review the CFR and guess as to how DPL might have interpreted it or followed it.

Interrogatory 18:  The question has not been answered.  The question is not about what is required.  The question relates to feasibility and is within the knowledge of Defendant.

Interrogatory 21:  I am entitled to know and understand each person's role at the scene.  DPL did not answer.

Interrogatory 22:  You did not respond to this interrogatory.  As an accommodation to resolve this issue, I offered to exclude accidents involving above-ground level electrical lines.  You have continued to refuse to respond.

## II.   **Responses to Document Requests**

Request 1:  We are still coming up short on drawings or schematics specific to the room and the equipment contained therein.  I will need to take the deposition of a custodian of records on this issue.

Request 7:  DPL has failed to respond.  The contracts are discoverable.

Request 8: You have not produced a privilege log.

Request 9: No response and no privilege log provided.

Request 10:  DPL's internal policies, procedures and protocols would NOT be available to me.

Request 11:  DPL's internal policies, procedures and protocols would NOT be available to me.

Request 12:  DPL's internal policies, procedures and protocols would NOT be available to me.

Request 16:  You have not provided a privilege log relating to allegedly privileged documents not produced.

Request 18:  You have not provided a privilege log relating to allegedly privileged documents not produced.

Can we set up a call for tomorrow (August 1) Saturday (August 2), Monday (August 4) or Tuesday (August 7) to determine whether any of these outstanding issues can be resolved or need to be submitted to the Magistrate Judge for determination?

My plan is to file a formal letter to Magistrate Judge A. David Copperthite on the *morning* of September 6.

Sincerely,

Patrick C. Timoney

cc:     Kenneth G. Macleay, Esquire