PHILLIP R. ZUBER*
THOMAS A. McMANUS
MARK T. FOLEY
FRANK R. JONES*
MICHAEL L. ADAMS
TAYLOR R. KONCEN*
VINAY S. KATAKAM

*ALSO ADMITTED IN D.C.
+ALSO ADMITTED IN PA

LANSDALE G. SASSCER (1893-1964)
HAL C.B. CLAGETT (1916-2010)
JAMES R. BUCHER (1929-2009)
WILLIAM N. ZIFCHAK (1942-2022)

OF COUNSEL:
    SHEILA F. FLESHMAN*+

LA PLATA OFFICE:
    102 Centennial Street, Suite 102
    La Plata, MD 20646
    301-934-2490

Writer's Direct Dial: (240) 510-9216

Writer's E-mail address:
    pzuber@scblawyers.com



September 15, 2023

The Honorable A. David Copperthite
United States District Court for the District of Maryland
101 West Lombard St., Chambers 50
Baltimore, MD 21201

      Re:   *Andrew Lee Warnick v. Delmarva Power & Light Co.*
           Case No. 1:23-cv-00175-RDB
           Our File No. 0299-43523

Dear Judge Copperthite:

      This letter is provided on behalf of the Defendant Delmarva Power & Light in response to the letter dated September 12, 2023 from Plaintiff's counsel, Patrick Timoney, regarding the sufficiency of DPL's paper discovery responses and the unavailability of a DPL employee based on his medical disability status.

      I.      <u>Answers to Interrogatories</u>

      1.      DPL has provided a lengthy, detailed response to Plaintiff's first interrogatory which contains seven subparts. Plaintiff complains only of the sufficiency of the subpart (c), seeking when the date electrical equipment was "first installed." DPL has provided that information as to the 1974 installation. Plaintiff now seeks different information as to when sand fuses were last replaced. That was not sought in the interrogatory and the present answer to interrogatory is legally sufficient and fully responsive.

      14.     Interrogatory 14 sought methods utilized by DPL to monitor the Electrical Room where the incident occurred. Within a comprehensive answer, DPL responded regarding its monitoring or inspection that "it did not do so as a matter of routine or practice, because the room was locked and the real property was controlled and owned by the condominium and/or its agents. That answer is fully responsive to the interrogatory.

15. Interrogatory 15 seeks information as to what would have been worn by DPL employees had they entered the Electrical Room instead of the Plaintiff. DPL objected to the relevance of the inquiry, but indicated that DPL's employees would have worn the personal protective equipment (PPE) as set forth in 29 CFR 1910.137. That regulation as well as the DPL documents relating to PPE requirements were provided to the Plaintiff. Plaintiff has the requested information.

18. Interrogatory 18 asks why no barrier was placed. The Answer states, in part, that the reason was because they were not required. Plaintiff now wants to change the interrogatory to whether such was feasible. That was not the question.

21. Interrogatory 21 sought the identities of DPL personnel who responded to the scene after the accident. DPL has identified seven person who responded to this occurrence and identified their position within DPL and explained the reason for their presence, i.e., responding as a result of this occurrence. No further summary of their knowledge is sought in the interrogatory or required in the response. Three DPL employees are presently scheduled for deposition.

22. Interrogatory 22 seeks information about reports, claims, complaints or lawsuits relating to occurrences similar to this event. DPL correctly points out that claims or lawsuits are not relevant, relying on *Lai v. Sagle*, 373 Md. 308, 818 A.2d 237 (2003). Despite this objection, DPL substantively responded to the question by responding that it had no prior events involving non-employees getting access through locked rooms to energized equipment. Claims involving non-similar events are not relevant and would not be admissible.

II. Response to Document Request

7. This request sought contracts or agreements relating to the premises or Electrical Room. DPL has provided all such documents. It has no unprovided documents (before or after the occurrence date) relating to this request.

8-9. These requests seek communications concerning access to the Electrical Room. All such non-privileged documents (before or after

the occurrence date) has been provided. A privilege log regarding privileged documents is in progress and will be provided shortly.

10-12. These requests sought "codes, standards, recommended practices and procedures or internal policies, procedures or protocols" relating to repair, maintenance and access to the equipment in question. DPL, in its answers to interrogatories, provided substantive responses as to the absence of such codes, government standards, electrical utility standards or in-house standards. Document responses 10-12, consistent with this discovery, pointed out that codes, laws and standards are publicly published and not the obligation of DPL to produce. DPL did produce a federal regulation (29 CFR 1910.137), despite the lack of an obligation to do so. In short, DPL has provided responses to this request and has no further duty to identify applicable legal authority in a request for production of documents.

16. Request 16 seeks documents relating to warnings. DPL produced the warning sign and the investigative reports of third parties referencing warnings. DPL currently has no responsive documents which have not been produced.

18. Request 18 seeks witness statements. Similar to Request 16, DPL has produced the responsive documents referenced in its response.

    III.    <u>Chad Potter</u>

Chad Potter, a DPL employee, is out on medical disability leave and has been in this status for the last six weeks. Being on disability leave, DPL cannot compel him to appear for a deposition. His expected return date has not been established.

Potter was one of seven DPL persons who responded to the scene after the event. The other DPL employees are available for deposition. Potter's role was as "distribution supervisor" for DPL. A second distribution supervisor, Larry Jarvis, was on duty that evening and is scheduled for deposition.

As to Potter, DPL does not have his permission to disclose the specifics of his condition, but suggests the following:

1. Proceed with presently scheduled fact depositions of other DPL employees;

2. Determine Potter's availability in 30 days;

3. It will consent to adjustments to the discovery schedule, including experts, to accommodate this delay.

    Should Plaintiff insist on proceeding by serving Potter (a home address can be obtained) and then a Motion for Protective Order (likely filed by DPL on Potter's behalf) will likely address his medical status more directly as to whether he can undergo the vigors of a deposition.

* * *

    Defense counsel is available for a conference call, if the Court finds it appropriate, regarding any of the issues addressed in this letter.

    Very truly yours,

    /s/ Phillip R. Zuber

    Phillip R. Zuber
    Bar No. #03501

PRZ/cma
cc:    Patrick C. Timoney, Esq.