# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANDREW WARNICK, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil No. RDB-23-0175 |
| DELMARVA POWER & LIGHT CO., | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On September 9, 2021, Plaintiff Andrew Warnick, a maintenance worker for a condominium in Ocean City, Maryland, unlocked and entered an electric supply substation on the premises of the condominium. (Am. Compl. ¶¶ 9, 35–36, ECF No. 10.) Warnick stepped near an exposed and energized metal component part, shocking him with electricity that resulted in serious burns and other injuries. (*Id.* ¶¶ 37–39.) He filed suit in this Court under the basis of diversity of citizenship against Defendant Delmarva Power & Light Company, which designed, constructed, and maintained the electric supply substation where Warnick was injured. (*Id.* ¶ 9–10.) He brings three counts: strict liability (Count One), negligence (Count Two), and punitive damages (Count Three).[1]

Now pending is Delmarva's Motion to Dismiss Counts One and Three of the Amended Complaint. (ECF No. 13.) The parties' submissions have been reviewed and no

---

[1] The original complaint was filed on January 24, 2023 against Delmarva Power & Light Company, Potomac Electric Power Company, Pepco Holdings LLC, and Exelon Corporation. (ECF No. 1.) The amended complaint, filed on April 26, 2023, removed all of the defendants except for Delmarva Power & Light Company. (ECF No. 10.)

hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, Delmarva's Motion to Dismiss is **GRANTED.**

## BACKGROUND

On September 9, 2021, Plaintiff Andrew Warnick was employed by Dudley Property Maintenance, Inc., d/b/a Maintenance Connection, which provided maintenance services to the Oceana Condominium, a condominium in Ocean City, Maryland. (Am. Compl. ¶ 2, ECF No. 10.)

Defendant Delmarva Power & Light Company owned, operated, and maintained an electric supply substation on the premises of the Oceana Condominium. (*Id.* ¶ 9.) The substation could be accessed by double doors, which had a lock on the doorhandle. (*Id.* ¶ 14.) The doors also had a small sign identifying "Delmarva Power, an Exelon Company" as the owner and operator of the substation and stating that access was limited to "authorized personnel." (*Id.*) Delmarva provided keys to the substation to the building owner and property manager. (*Id.* ¶ 15.) At the time of the events in question, the property manager was Braniff Property Management, LLC. (*Id.* ¶ 23.) Braniff hired Maintenance Connection to provide maintenance duties for the Oceana Condominium, and Braniff provided Maintenance Connection with a key to the substation. (*Id.* ¶¶ 28, 30.)

On September 9, 2021, while working at the Oceana Condominium, Mr. Warnick used the key that Braniff had given Maintenance Connection to unlock and enter the substation. (*Id.* ¶ 36.) Upon entering, he inadvertently stepped near an exposed and energized metal component part. (*Id.* ¶ 37.) Mr. Warnick was electrocuted, and he suffered serious burns and other injuries. (*Id.* ¶ 39.) He was transferred to the Johns Hopkins Bayview Burn Center and

hospitalized in the intensive care burn unit. (*Id.* ¶ 40.) He has since undergone medical treatment for his injuries including skin grafting and amputation, and he has other injuries including cognitive deficits and scarring. (*Id.* ¶¶ 41–42.) Mr. Warnick has been disabled from work and has partially lost use of his right arm and hand. (*Id.* ¶¶ 43–46.) He has also had memory loss, severe anxiety, and depression (*Id.* ¶ 47.)

On January 24, 2023, Mr. Warnick filed suit in this Court against Delmarva under the basis of diversity of citizenship, 28 U.S.C. § 1332(a)(1).[2] (Compl. ¶ 12, ECF No. 1.) Mr. Warnick amended his complaint on April 26, 2023. (ECF No. 10.) The Amended Complaint includes three counts: strict liability (Count One), negligence (Count Two), and punitive damages (Count Three). Delmarva has moved to dismiss the strict liability and punitive damages counts (ECF No. 13) and has filed an Answer to the negligence count (ECF No. 14).

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted).

---

[2] As noted above, the original complaint included three other defendants, but those defendants were dropped from the amended complaint. (*See* ECF Nos. 1, 10.)

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

In his three-count amended complaint, Warnick alleges three tort claims against Delmarva under Maryland law:[3] (1) strict liability (Count I); (2) negligence (Count II); and (3) punitive damages (Count III). (Am. Compl. ¶¶ 52–90, ECF No. 10.) Delmarva seeks the dismissal of Counts One and Three. (ECF No. 13-1 at 1.) For the reasons detailed below, Delmarva's Motion to Dismiss (ECF No. 13) is **GRANTED**.

### I.     Strict Liability for Abnormally Dangerous Activities (Count I)

---

[3] As the basis of this Court's jurisdiction is diversity of citizenship under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) ("Federal courts sitting in diversity apply federal procedural law and state substantive law." (citing *Gasperini v. Ctr. For Humanties, Inc.*, 518 U.S. 415, 427 (1996))).

4

The Supreme Court of Maryland has recognized the doctrine of strict liability for abnormally dangerous activities. *Toms v. Calvary Assembly of God, Inc.*, 132 A.3d 866, 871 (Md. 2016) (citing *Yommer v. McKenzie*, 257 A.2d 138, 139 (Md. 1969)).[4] Maryland courts have adopted the general principle from the Restatement (Second) of Torts § 519, which states that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Gallagher v. H.V. Pierhomes, LLC*, 957 A.2d 628, 634 (Md. 2008) (quoting Restatement (Second) of Torts § 519 (1977)). To determine whether an activity is "abnormally dangerous," courts examine the six factors enumerated in § 520 of the Restatement (Second) of Torts. *Toms*, 132 A.3d at 871–72. These factors include:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977). "The thrust of the doctrine is that the activity be abnormally dangerous in relation to the area where it occurs." *Toms*, 132 A.3d at 872 (quoting *Kelley v. R.G. Indus., Inc.*, 497 A.2d 1143, 1146 (Md. 1985)). Accordingly, "the appropriateness of the activity in the particular place [is] the most crucial factor." *Id.* (quoting *Kirby v. Hylton*, 443 A.2d 640, 645 (Md. Ct. Spec. App. 1982)); *see also Yommer*, 257 A.2d at 141 ("We accept

---

[4] At the time of *Toms*, the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the "Supreme Court of Maryland." The name change took effect on December 14, 2022.

the test of appropriateness as the proper one: that the unusual, the excessive, the extravagant, the bizarre are likely to be non-natural uses which lead to strict liability.").

This Court has found that the transmission of electricity is not an abnormally dangerous activity because it is a "daily occurrence in every community in the United States" and, when conducted by a public utility, it is a public duty. *Voelker v. Delmarva Power & Light Co.*, 727 F. Supp. 991, 994–95 (D. Md. 1989). As this Court has previously stated, "to hold utilities to absolute liability by declaring their conduct to be ultrahazardous would be the equivalent of declaring them insurers for all members of the community in which they serve." *Id.* at 994. In *Voelker*, this Court noted that "in most ultrahazardous activity cases there is no ability to protect oneself. The victim has no connection to the events which lead to his accident." *Id.* at 994–95. In this case, as in *Voelker*, the victim "came to the hazard. It was not imposed upon him." *Id.* at 995. And in this case, as in *Voelker*, "claims arising out of this unfortunate accident are better suited for resolution through traditional negligence claims." *Id.* Therefore, the strict liability claim fails to state a claim upon which relief can be granted.

Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Count I.

## II.     Punitive Damages (Count III)

Under Maryland law, a plaintiff in a tort action "must prove that a defendant had actual malice in order to obtain punitive damages." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (citing *Montgomery Ward v. Wilson*, 664 A.2d 916, 930 n.5 (Md. 1995)). "[P]unitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d

633, 650 (Md. 1992). Judge Russell of this Court has explained that "a plaintiff must demonstrate the tortfeasor acted with actual malice, meaning the 'defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud.'" *Cavey v. Mach Trucking LLC*, No. GLR-16-1339, 2016 WL 5462791, at *2 (D. Md. Sept. 29, 2016) (quoting *Zenobia*, 601 A.2d at 652). "[P]unitive damages are reserved for 'punishing the most heinous of intentional torts and tortfeasors.'" *Cavey*, 2016 WL 5462791, at *2 (quoting *Beall v. Holloway-Johnson*, 130 A.3d 406, 419 (Md. 2016)). "A plaintiff must prove the basis for punitive damages by clear and convincing evidence." *Id.* (citing *Zenobia*, 601 A.2d at 657).

"It is a well settled proposition in Maryland law that a cause of action does not exist for punitive damages alone." *Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1233 (Md. 2005). "[T]here must be a compensatory damages award foundation for each count of a complaint that provides a basis for punitive damages." *Id.* at 1234. In this case, Plaintiff has styled punitive damages as a separate count. (*See* Am. Compl. ¶¶ 83–90, ECF No. 10.) Because punitive damages are not a separate cause of action under Maryland law, this count must be dismissed. However, Warnick "requests leave of Court to file a Second Amended Complaint that would remove Count III and add the request for punitive damages to the prayer for relief in Counts I and II." (ECF No. 17 at 7.) Because Count I is dismissed, only Count II remains. Therefore, Plaintiff is hereby GRANTED leave to amend his complaint for the sole purpose of including punitive damages in the prayer for relief as to his negligence claim.[5]

---

[5] Plaintiff is entitled to the discovery on the issue of punitive damages, as he must prove that Defendant acted with actual malice. *See Bell v. Heitkamp, Inc.*, 728 A.2d 743, 752 (Md. Ct. Spec. App. 1999) ("In order to justify a punitive damage award in a non-intentional tort case, a plaintiff must prove that the defendant acted with actual and not just implied malice." (quoting *Owens-Corning Fiberglas Corp. v. Baltimore City*, 670 A.2d 986, 989 (Md. Ct. Spec. App. 1996)).

Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Count III.

## CONCLUSION

For the foregoing reasons, Defendant Delmarva Power & Light Company's Motion to Dismiss (ECF No. 13) is **GRANTED.**

A separate order follows.

Date: November 3, 2023

_____/s/_____
Richard D. Bennett
United States Senior District Judge