

Veva 14, Suite 404
1777 Sentry Parkway West
Blue Bell, PA 19422
610-400-1970 **office**
610-850-9994 **fax**

**www.devinetimoney.com**

Patrick C. Timoney
Direct Dial: 610.400.1970 ext. 102
Email: ptimoney@devinetimoney.com

May 8, 2024

**Via Electronic Filing System**
The Honorable A. David Copperthite
United States District Court
District of Maryland
101 West Lombard Street
Chambers 8B
Baltimore, MD 21201

      RE:    Warnick v. Delmarva Power & Light – Plaintiff's Motion to Compel
              Docket No.: 23-cv-175

Dear Judge Copperthite:

      This letter is written pursuant to the Discovery Guidelines, attached to the Local Rules for the District of Maryland.  The purpose of this letter is to bring discovery disputes to the attention of this Honorable Court.  Depositions taken in this matter have revealed an ongoing pattern and practice by Defendant Delmarva Power and Light to suppress and fail to produce highly relevant documents that were request by Plaintiff in June of 2023.

      This action was initiated by Plaintiff to recover serious and permanent injuries that he sustained after he was needlessly exposed to high voltage electricity as a result of Defendant Delmarva Power's failure to properly secure its high voltage equipment located on residential property.  The high voltage electrical switches involved are pictured here:



These high voltage switches are so unusual that even individuals who have worked entire careers as lineman for Defendant Delmarva power testified that they have never seen this type or switch, or any other high voltage switch that is not contained within a cabinet. It is admitted by Defendants employees that as early at the 1980's Delmarva Power no longer installed high voltage switches that were not entirely contained within cabinets anywhere in its system.

## Issue 1: Plaintiff's Motion to Compel Product of Documents and Defendant's Ongoing Failure to Produce Relevant Documents

On August 2, 2023, Plaintiff filed a letter with the Court seeking overdue Answers to Interrogatories and Request for Production of Documents that were propounded upon Defendant on June 14, 2022. On August 4, 2023, counsel for Defendant provided Responses to Requests for Production of Documents. A copy of these written responses (which incorporate Plaintiffs Requests) are attached hereto as Exhibit "A."

The sufficiency of Defendant's discovery responses has been the topic of previous discovery motions in this matter. The testimony of witnesses in this matter has revealed that Defendant failed to timely disclose or produce highly relevant documents responsive to Plaintiff's discovery requests and, once the existence of such documents was discovered, has still failed to produce them. Plaintiff has already produced expert reports in this matter and is severely prejudiced by Defendant's ongoing failure to produce important and relevant documents.

**A. Defendant's Failure to Produce Lists Prepared by Its Reliability Department of Equipment or Equipment Rooms Identified for Replacement or Upgrade Prior to the Plaintiff's Accident.**

Plaintiff's Request For Production of Documents, served upon Defendant on June 14, 2023, included the following request: *4. Any document or records that pertain to the maintenance and/or replacement of Equipment owned or installed by you in the Electrical Room.* On August 4, 2024. Defendant Delmarva responded by stating "DPL has not found any documents in response to this request." (Exhibit A attached hereto.)

At the deposition of former Delmarva employee Patrick Dubinski on March 1, 2024, plaintiff learned for the first time that he and Delmarva employee Ron Browning were tasked with responsibility of compiling a list of properties and rooms, including the subject accident location, that contained the same or similar type of equipment as the subject incident location for the specific purpose of "working with standards to develop how to replace it." See "Exhibit B", Patrick Dubinsky deposition at p. 39-40. Mr. Dubinski further testified that a copy of the list was maintained on Delmarva's shared drive (Dubinski Dep p. 41) and that a copy was also provided to Mr. Dubinski's boss, Shirley Banks (Dubinski Dep. p.43). Dubinski further testified that the purpose of the list was to seek manager Dan Guy's support for replacing switches. (Dubinski Dep. p.44) Dubinski further testified in 2019 presentation date, Delmarva was considering "a plan" to upgrade and/or relocate equipment located in condos, including switchgear. (Dubinski Dep p.76-79). Dubinski further testified that, in the process of compiling the list, he was in the very electric room where the accident occurred "to seek alternatives with construction for like

future improvements." (Dubinski Dep. P. 89). Dubinski further testified that he likely had notes relating to his visit to the subject room that were saved internally "in probably a binder." (Dubinski Dep. 90).

At the deposition of Delmarva Power employee Ronald Browning on April 22, 2024, Mr. Browning testified that there were also emails exchanged between him and Mr. Dubinski about infrastructure upgrades. Ronald Browning Deposition attached at "Exhibit C", at p. 71-72. In the face of Defendants failure to produce these documents prior to Mr. Browning's deposition, it was particularly troubling to learn that Mr. Browning's access to his own folder on this issue was blocked by Delmarva:
> Q. Were these photos maintained by you?
> A. The were in my old reliability folder on our (Defendant's)
> shared drive but I tried to access the whole folder the other day and
> I lost a bunch of information or I don't have access to it anymore.

Browning Dep. At p. 33.

By letter dated March 22, 2024, following the deposition of Mr. Dubinski, counsel specifically requested the list prepared by Mr. Dubinski and related memos relating to equipment upgrades or replacement, but no such documents have been produced by Defendant, even though the request for such documents has been outstanding for more than ten months. (A copy of plaintiff counsel's March 22, 2024 letter is attached here as "Exhibit D.") Nor has any information been provided about when or how such documents were destroyed. By letter dated April 2, 2024, Counsel for Defendant stated he would provide a response to this request by April 12, 2024. A copy of this letter is attached here as "Exhibit E." To date, no documents have been produced.

Plaintiff respectfully requests an Order:
1. That Defendant Delmarva Power Immediately Produce all documents in its possession that discuss or make reference plans to update, replace or contain old or outdated high voltage electrical equipment located inside residential properties; and that
2. Delmarva Power produce knowledgeable witnesses, including, but not limited to in-house counsel working for Delmarva Power or its parent companies, for deposition on the issues of
    a. the entire history of Patrick Dubinski's paper records, emails and electronic folders saved physical files or on Delmarva Power's shared drive;
    b. what, if any, inquiries were made to Delmarva Power's reliability department or to relevant former reliability department employees when preparing responses to discovery requests in 2023 about plans to upgrade or replace equipment at the property that is the subject of this action.
    c. the entire history Delmarva Power employee Ronald Browning's emails and "Reliability file" contained on Delmarva's shared drive, including the manner and dates that documents were removed from that file and/or destroyed and the date and reasons that Mr. Browning was disabled from being able to access that file to prepare for his deposition

3

**B. Defendants' Failure to Produce Documents Relating to Pre-Accident Efforts to Secure the Electric Room Door At Issue**

Plaintiff's Request For Production of Documents, served upon Defendant on June 14, 2023, included the following request: *8.    Any and all letters, emails correspondence or records of any communications between you and any other party relating to securing the Electrical Room from access....*

In it's response to Request for Production of Documents, provided only after Plaintiff filed its motion to compel, Defendant stated "DPL has not found any documents relating to such communications before 9-9-2021." Further, in a letter to Your Honor filed with this Court on September 15, 2023, specifically with respect to this document request, counsel for DPL represented that "All such non-privileged documents (before or after the occurrence date) has been provided. A copy of Defendant's Counsel's September 15, 2023 letter to the Court is attached here as "Exhibit F." Plaintiff has now obtained evidence from a third party locksmith indicating that these prior statements of Defendant and its counsel were false.

At the deposition of defendant's former employee Patrick Dubinski, we learned for the first time that in or about 2019, Delmarva obtained a quote from Salisbury Door & Lock to replace locks on condo electric room doors, including the electric room door in question. Dubinski deposition at pp. 100-104. Further, Mr. Dubinski testified that Defendant Delmarva received a quote where Salisbury Door & Lock "recommended a lock, saddle and clasp …. To add a padlock". (Dubinsky deposition, p. 100-104). By letter dated March 22,2024, Plaintiff's counsel requested all documents relating to Dubinski's testimony about ordering locks from Salisbury Door & Lock, but no such documents have been provided. Nor has any information been provided about when or how such documents were destroyed. By letter dated April 2, 2024, counsel for Defendant stated he would provide a response to this request by April 12, 2024. To date, no substantive response on this issue has been received.

On May 6, 2024, in response to a subpoena, Salem Inc. t/a Salisbury Door & Lock produced documents showing what appears to be a quote dated February 6, 2020 to install a lock on the very electrical room door at issue in this case, as well as emails to multiple Delmarva employees concerning a walk-around inspection of properties in Ocean City that involved both Delmarva employees from Salisbury Door & Lock. The documents are attached here, in pertinent part, as "Exhibit G." They show quotes provided to Delmarva Power and multiple chains of emails from 2019 and 2020 with as many as five (5) Delmarva employees copied on the emails. It is inconceivable that Defendant does not also have copies of these documents and/or emails as well as other documents relating to this issue as well as documents relating to the "walk around inspection" performed with Salisbury Door & Lock.

To date, no documents whatsoever relating to inquiries made to Salisbury Door & Lock, quotes received from Salisbury Door & Lock, and walk-around inspections performed with Salisbury Door & Lock have been produced by Defendant.

Plaintiff respectfully requests an Order:
1. That Defendant Delmarva Power immediately produce all documents in its possession that in any way relate to requests for quotes or quotes received for any third party to add locks to electric room doors in Ocean City, including the door at issue, as well as any and all documents relating to walk-around inspections conducted with third party locksmiths to inspect doors in Ocean City and prepare quotes;
2. That Defendant Delmarva Power immediately re-produce former employee Patrick Dubinski for deposition concerning documents produced by Salisbury Door & Lock and documents to be produced by Defendant Delmarva Power in response to this Order;
3. Delmarva Power produce knowledgeable witnesses, including, but not limited to in-house counsel working for Delmarva Power or its parent companies, for deposition on the issues of
    a. the entire history of Patrick Dubinski's paper records, emails and electronic folders saved on Delmarva Power's shared drive; as well as the emails of other Delmarva employees included on the Salisbury Door & Lock emails;
    b. what, if any, inquiries were made to Delmarva Power's reliability department when preparing responses to discovery requests in 2023 about efforts to secure the electric room door at issue in this case;
    c. each and every reason why the lock was never installed on the door at issue after the quote was received from Salisbury Door & Lock and after Delmarva employee Patrick Dubinski approved of the cost; and
    d. each and every reason why the Oceana (the property at issue in this case) and Antigua (a neighboring property) were singled out for the installation of locks by a third party locksmith among all of the properties in Ocean City.

**C. Defendants' Failure to Produce Its Internal Rules, Standards, Practices and Procedures.**

Plaintiff's Request For Production of Documents, served on June 14, 2023, also included the following request: *10. Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols referenced by you or which pertain to the installation, repair, maintenance, inspection or scheduled obsolescence of any of the equipment or component parts located in the Electrical Room belonging to You.*

In its untimely response to this document request provide on August 4 2023, Defendant stated "The Defendant is not obligated to produce publicly available laws, codes, regulations and industry standards. It will produce, if any, documents created by DPL relating to the requested matters." See Exhibit A attached hereto. However, no internal procedures or standards were ever produced. Further, in a letter to this Court, Exhibit F attached hereto, filed on September 15, 2023, Defendant Delmarva Power stated "….DPL, in its answers to interrogatories, provided substantive responses as to the absence of such codes, government standards, electric utility or in-house standards …In short, DPL has provided responses to this request…" These representations are not true. Defendant maintains it own manual of in-house procedures, protocols and standards that has never been produced.

At the deposition of Patrick Dubinski, we learned for the first time that Delmarva Power maintains its own internal book of standards and procedures for reference by its employees, including engineers working in the reliability department. Dubinski dep, page 20. More, recently on April 22, 2024 Robert Browning testified that the *only* standards that he referenced in his job as a reliability engineer for Delmarva were Delmarva's "internal standards." Browning Dep. At p.12. He testified "we have construction standards, material standards, and then distribution standards." Id. Browning said that the standards "used to handed to us in binders and kept up with – via our standards department. We have an internal standards department but they have since gone to a SharePoint website." Browning Dep. At pp. 12-13. Concerning the "knife blade" style high voltage switch at issue in this case, Mr. Browning testified that he has only seen such a switch twice in his entire career and before that only "in pictures and on our standards manual." Browning Dep. At p. 28. Neither Mr. Dubinski nor Mr. Browning referenced and "publicly available standards" as something that they regularly referenced or replied upon when working at Delmarva Power.

Plaintiff respectfully requests an Order
1. That Defendant Delmarva Power immediately produce a full and complete copy of the Delmarva Standards Manual.

**Issue 2: Depositions of Additional Delmarva Employees**

Based upon the testimony of Mr. Dubinski, Plaintiff's counsel also requested the depositions of the following Delmarva Employees, with designated pages in the Dubinski deposition where the employee is referenced: Tommy Jones (37, 46), Shirley Banks (43), Delmarva "Safety Manager" (24) (96) (115), Delmarva "Trouble Service Person" (94); and Jim Smith (115). Plaintiff noticed these depositions to take place at Delmarva's office on April 24 and 25, but also invited counsel for Delmarva to provide alternative dates and/or the last known address of any individuals who no longer work for the Defendant. As of May 6, defendant had only provided a date for Mr. Smith's deposition. Today, May 8, Defendant also offered a date for Ms. Bank's deposition.

Plaintiff respectfully requests an Order:
1. That Defendant Delmarva Power immediately produce the following witnesses, or, if no longer employed by Defendant, such individual's last known address: Tommy Jones, Delmarva "Safety Manager" as identified by witness Dubinski and, the Delmarva "Trouble Service Person" identified by witness Dubinski.

**Efforts to Resolve**

As set forth above, the request at issue here were previously the subject of discovery motions in 2023. If Defendant had diligently and accurately responded to Plaintiff's initial discovery requests, these documents should have been provided in or prior to August of 2023. On March 22, 2024, after learning of the existence of documents not produced, defendant sought to resolve these issues by correspondence at by subsequent telephone call with counsel in the first week of April 2024. A copy of counsel's March 22, 2024 letter is attached hereto as "Exhibit D."

**Summary: Relief Requested**

      Plaintiff respectfully request that this Honorable Court enter the following Order:

1. Defendant Delmarva Power shall produce all documents in its possession that discuss or make reference to plans to update, replace or contain old or outdated high voltage electrical equipment located inside residential properties within five (5) days;

2. Delmarva Power shall produce within forty (40) days knowledgeable witnesses, including, but not limited to in-house counsel working for Delmarva Power or its parent companies, for deposition on the issues of
    a. the entire history of Patrick Dubinski's paper records, emails and electronic folders saved physical files or on Delmarva Power's shared drive;
    b. what, if any, inquiries were made to Delmarva Power's reliability department or to relevant former reliability department employees when preparing responses to discovery requests in 2023 about plans to upgrade or replace equipment at the property that is the subject of this action.
    c. the entire history Delmarva Power employee Ronald Browning's emails and "Reliability file" contained on Delmarva's shared drive, including the manner and dates that documents were removed from that file and/or destroyed and the date and reasons that Mr. Browning was disabled from being able to access that file to prepare for his deposition

3. Defendant Delmarva Power shall produce all documents in its possession that in any way relate to requests for quotes or quotes received for any third party to add locks to electric room doors in Ocean City, including the door at issue, as well as any and all documents relating to walk-around inspections conducted with third party locksmiths to inspect doors in Ocean City and prepare quotes within five (5) days;

4. Defendant Delmarva Power shall re-produce former employee Patrick Dubinski for deposition within forty (40) days concerning documents produced by Salem Inc. t/a Salisbury Door & Lock and documents to be produced by Defendant Delmarva Power in response to this Order;

5. Delmarva Power shall produce within forty (40) days knowledgeable witnesses, including, but not limited to in-house counsel working for Delmarva Power or its parent companies, for deposition on the issues of:
    a. the entire history of Patrick Dubinski's paper records, emails and electronic folders saved on Delmarva Power's shared drive; as well as the emails of other Delmarva employees included on the Salisbury Door & Lock emails;
    b. what, if any, inquiries were made to Delmarva Power's reliability department when preparing responses to discovery requests in 2023 about efforts to secure the electric room door at issue in this case;
    c. each and every reason why the lock was never installed on the door at issue after the quote was received from Salisbury Door & Lock and after Delmarva employee Patrick Dubinski approved of the cost; and

d. each and every reason why the Oceana (the property at issue in this case) and Antigua (a neighboring property) were singled out for the installation of locks by a third-party locksmith among all of the properties in Ocean City;

6. Defendant Delmarva Power shall produce a full and complete copies of the Delmarva Power Internal Standards Manual within five (5) days;

7. Defendant Delmarva Power shall produce the following witnesses within the next forty 40 days, or, if no longer employed by Defendant, such individual's last known address within five (5) days: Tommy Jones, Delmarva "Safety Manager" as identified by witness Dubinski and, the Delmarva "Trouble Service Person" identified by witness Dubinski; and

8. Defendant's failure to comply with the Order of the Court shall result in the imposition of sanctions.

Respectfully submitted,

Patrick C. Timoney

PCT/mel
Attachments

cc:    Mark T. Foley, Esquire
        Ken Macleay, Esquire