# EXHIBIT "D"



Veva 14, Suite 404
1777 Sentry Parkway West
Blue Bell, PA 19422
610-400-1970 **office**
610-850-9994 **fax**

**www.devinetimoney.com**

**Patrick C. Timoney,** Partner
ptimoney@devinetimoney.com

March 22, 2024

<u>**Via Electronic Mail**</u>
Mark T. Foley, Esquire
Sasscer, Clagett & Bucher
5407 Water Street, Suite 101
Upper Marlboro, MD 20772

> **Re:**    **Andrew Lee Warnick v. Delmarva Power & Light Company, et al.**
>       **U.S.D.C. for the District of Maryland Northern Division**
>       **Docket No. 23-cv-175**

Dear Mr. Foley:

The following letter is sent to address the production of documents referenced at the Mr. Dubinski's deposition that were previously requested but never produced.  Please produced these documents within the next ten (10) days so that I may avoid having to file a Motion to Compel. In addition, based upon Mr. Dubinski's testimony, we will need to complete the depositions of additional Delmarva employees.  Note that the Deposition notices provided are intended to be placeholder dates, subject to change based upon your schedule and the witnesses' availability.

<u>**Documents Requested But Not Produced By Delmarva:**</u>

Plaintiff's Request For Production of Documents, served upon your firm on June 14, 2023, included the following request:

*4. Any document or records that pertain to the maintenance and/or replacement of Equipment owned or installed by you in the Electrical Room.*

At the deposition of Mr. Dubinski, we learned for the first time that he and Ron Browning were tasked with responsibility of compiling a list of properties and rooms (including the subject accident location) that contained the same or similar type of equipment as the subject incident location for the purpose of "working with standards to develop how to replace it.."  Debinsky deposition at p. 39-40.  Mr. Dubinski further testified that a copy of the list was maintained on Delmarva's shared drive (p. 41) and that a copy was also provided to Mr. Dubinski's boss, Shirley Banks (p.43).  Dubinski further testified that the purpose of the list was to seek manager Dan Guy's support for replacing switches. (p.44) Dubinski further testified that, as of the 2019 presentation date, Delmarva was considering



"a plan" to upgrade and/or relocate equipment located in condos, including switchgear. (76-79). Dubinski further testified that, prior to the accident, he was in the very electric room where the accident occurred "to seek alternatives with construction for like future improvements." (89). Dubinski further testified that he likely has notes relating to his visit to the subject room that were saved internal "in probably a binder." (90) To date, neither Mr. Dubinski's list nor any other memos or communications relating to any plans or proposals on when or how or why such equipment would be replaced or upgraded or improved has been produced. Please promptly produce all such lists and documents.

Plaintiff's Request For Production of Documents, served upon your firm on June 14, 2023, also included the following request:

*8. Any and all letter, emails, correspondence or records of any communications between you and any other party relating to securing the Electrical Room from access by unqualified parties or describing persons or categories of person who are or may permitted access to the electrical room or to the location and proper handling and safeguarding of keys to the Electrical Room.*

At the deposition of Mr. Dubinski, we learned for the first time Delmarva obtained a quote from Salisbury Door and Hardware to replace locks on condo electric room doors including, possibly the door at Oceana1 condo and that the vendor "recommended a lock, saddle and clasp …. To add a padlock". (Dubinsky deposition, p. 100-104).

Plaintiff's Request For Production of Documents, served upon your firm on June 14, 2023, also included the following request:

*10. Any and all codes, standards, recommended practices and procedures or internal policies, procedures or protocols referenced by you or which pertain to the installation, repair, maintenance, inspection or scheduled obsolescence of any of the equipment or component parts located in the Electrical Room belonging to You.*

At the deposition of Mr. Dubinski, we learned for the first time that Delmarva Power maintains it's own book of electrical standards (Dubinski deposition, page 20). This has not been produced. Please promptly provide a copy. Further, Mr. Dubinski testified that the Safety Manager working for Delmarva Power at the time was responsible for reviewing and implementing the NFPA safety guidelines. To the extent that such safety manager maintained a copy of any NFPA guidelines, please promptly produce copies, that include any highlighting or notes whatsoever.

## Depositions of Additional Delmarva Employees

Based upon the testimony of Mr. Dubinski, we also need to complete the depositons of the following Delmarva Employees, with designated pages in the Dubinski deposition where the employee is referenced: Tommy Jones (37, 46), Shirley Banks (43), Delmarva "Safety Manager" (24) (96) (115), Delmarva "Trouble Service Person" (94); and Jim Smith (115).



As a placeholder, we have noticed these deposition to take place at Delmarva's office on April 24 and 25, but please let us know what dates will work on your end and we can finalize this schedule.

Very truly yours,

Patrick C. Timoney

PCT/mel
Enclosures

cc:     Ken Macleay, Esquire